Commonwealth *v.* Davenport, Appellant.

264

Argued April 28, 1972. Before Jones, C. J., Eagen, O'Brien, Roberts, Pomeroy, Nix and Manderino, JJ.

*Rudolph S. Pallastrone,* with him *Peter B. Scuderi,* for appellant.

*Milton M. Stein,* Assistant District Attorney, with him *Romer Holleran,* Assistant District Attorney, *James D. Crawford,* Deputy District Attorney, *Richard A. Sprague,* First Assistant District Attorney, and *Arlen Specter,* District Attorney, for Commonwealth, appellee.

Opinion by Mr. Justice Eagen, October 4, 1972:

Charged with participating in the armed robbery of a retail variety store in Philadelphia during which the proprietor was  fatally shot, the appellant, James

Davenport, was indicted for murder. After trial, the jury returned a verdict of guilty of murder in the first degree and fixed the punishment at life imprisonment. Subsequently, post trial motions were denied and sentence was imposed as the jury directed. This appeal followed.

About 2:30 p.m. on June 25, 1969, three young men were observed leaving the variety store involved in great haste and commotion. When the witnesses entered the store, the proprietor was found slumped on the floor and bleeding from the head.[1] The witnesses immediately alerted the police and described the individuals seen leaving the store as black males, about eighteen years of age, and wearing dark clothing. Police in the area were notified of the occurrence and directed to watch for persons fitting the description given. Shortly thereafter, Davenport was taken into police custody several blocks from the crime site. The arresting officer testified he seized Davenport, a young black male, because he appeared "nervous", was perspiring, and was carrying a white jacket over his arm which looked weighted. On inspection about twenty-seven dollars in change was found in the jacket.

At trial a written incriminating statement given by Davenport to the police was introduced in evidence against him, over objection. A timely pretrial motion to suppress this evidence had previously been denied. After carefully studying the record, we are convinced this evidence was the product of sustained police pressure which, under the circumstances, was tantamount to duress and hence its use at trial violated due process. Cf. *Rogers v. Richmond*, 365 U.S. 534, 81 S. Ct. 735 (1961).[2] Hence, we reverse and grant a new trial.

---

[1] The victim died on the same day at 11:30 p.m. of a gunshot wound of the head.

[2] In *Rogers*, the United States Supreme Court stated: "Our decisions under that Amendment have made clear that convictions

The burden was upon the Commonwealth to demonstrate by a preponderance of the evidence the challenged statement was given voluntarily, or, in other words, it was the free and unconstrained choice of Davenport. See *Commonwealth ex rel. Butler v. Rundle,* 429 Pa. 141, 239 A. 2d 426 (1968). As Mr. Justice O'BRIEN pointed out, while speaking for the Court in *Butler,* quoting from Mr. Justice FRANKFURTER'S opinion in *Culombe v. Connecticut,* 367 U.S. 568, 81 S. Ct. 1860 (1961), there is no "single litmus-paper test" for determining if the statements of one accused of crime are voluntary or if such evolved from constitutionally impermissible forms of interrogation. In determining this issue all of the attending factors and circumstances must be considered and evaluated. The statements need

following the admission into evidence of confessions which are involuntary, i.e., the product of coercion, either physical or psychological, cannot stand. This is so not because such confessions are unlikely to be true but because the methods used to extract them offend an underlying principle in the enforcement of our criminal law : that ours is an accusatorial and not an inquisitorial system— a system in which the State must establish guilt by evidence independently and freely secured and may not by coercion prove its charge against an accused out of his own mouth . . . . To be sure, confessions cruelly extorted may be and have been, to an unascertained extent, found to be untrustworthy. But the constitutional principle of excluding confessions that are not voluntary does not rest on this consideration. Indeed, in many of the cases in which the command of the Due Process Clause has compelled us to reverse state convictions involving the use of confessions obtained by impermissible methods, independent corroborating evidence left little doubt of the truth of what the defendant had confessed. Despite such verification, confessions were found to be the product of constitutionally impermissible methods in their inducement. Since a defendant had been subjected to pressures to which, under our accusatorial system, an accused should not be subjected, we were constrained to find that the procedures leading to his conviction had failed to afford him that due process of law which the Fourteenth Amendment guarantees." Id at 540-1, 81 S. Ct. at 739-40.

not be volunteered to meet constitutional requirements. Likewise, the fact that they result from police interrogation does not in itself proscribe their evidentiary use at trial. However, to be "voluntary" in the constitutional sense the statements must be the free choice of the maker. And if the maker's will was overborne, either through physical or mental pressures, then the statement did not issue from a free choice. Cf. *Watts v. Indiana*, 338 U.S. 49, 69 S. Ct. 1347 (1949); *Commonwealth v. Jackamowicz*, 443 Pa. 313, 279 A. 2d 7 (1971).

Where, as here, the trial court ruled the statement of the accused was voluntarily given, our review is limited to a consideration of the testimony of the witnesses offered by the Commonwealth and that portion of the testimony for the appellant which remains uncontradicted. So read, the instant record establishes the following facts.

After his arrest, Davenport was taken to the offices of the Homicide Division in the Police Administration Building for questioning. He was first given full warnings of his constitutional rights as mandated by *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602 (1966). From 3:50 p.m. until 8:50 p.m., with the exception of five short intervals of about ten minutes duration, he was subjected to the nearly constant questioning of as many as four police officers, sometimes alternating, sometimes together. During this period one of his hands was continuously handcuffed to a chair which was bolted to the floor. He was not given any food or drink and the chronology sheet prepared by the police doesn't indicate he visited the "rest room."[3]

Until 8:10 p.m., Davenport steadfastly denied any knowledge of the crimes. Thereafter, while still deny-

---

[3] According to the police witnesses, such incidents are "normally" recorded on the chronology sheet.

ing any participation in the crimes, he then said he witnessed the robbery through the store window, and subsequently entered the store and took some change from the cash register. About 8:50 p.m. he admitted participating in the robbery, but stated the fatal shot was fired by one of his co-felons.

About 9:50 p.m., while Davenport was still handcuffed to the chair, the taking of a formal statement began and the questions and answers were recorded on a typewriter by one of the questioning officers. This statement was completed at 11:45 p.m. Davenport then read and signed each page at 12:40 a.m. Following this, the statement (the questions by an officer and the answers by Davenport) was read into a tape recording device. However, the tapes could not be found or produced at the suppression hearing.[4]

Some time between 3 a.m. and 4 a.m. Davenport was found lying on the floor of the interrogation room foaming from the mouth and suffering a convulsion, which caused the police to remove him to a hospital. One of the police officers characterized the condition as an epileptic seizure.

As noted before, many factors must be considered in determining if the statements of one accused of crime are his free choice. One of the most important of these

---

[4] In the challenged statement, Davenport said he consumed a substantial quantity of intoxicants before the robbery and a "Homicide Record" prepared by the investigating police officers in connection with the case included this notation, "Defendants had been drinking prior to the incident." However, the police officers testified that during the questioning, Davenport "was not intoxicated."

We note, however, that the signature of Davenport appearing on the statement, as well as that appearing on the "waiver card" (signed at the time the "Miranda" warnings were given) are written in a patent, jagged and scrawled fashion, and differ markedly in style and regularity of letter from several specimens of his signature written during the suppression hearing.

factors is the accused's mental and physical state at the time. *Commonwealth v. Holton,* 432 Pa. 11, 247 A. 2d 228 (1968).[5] And while the fact that an accused has been drinking does not automatically invalidate his subsequent statements (*Commonwealth v. Smith,* 447 Pa. 457, 291 A. 2d 103 (1972)), it is a circumstance to be considered in resolving if his will to resist was overcome by overbearing questioning, particularly where the drinking was substantial.

After reading and re-reading the instant record, we have grave reservations concerning Davenport's ability to resist and to make a rational and intelligent choice at the time he incriminated himself. Taking into consideration his physical condition, as evidenced by the record, plus all of the other attending circumstances, we are not persuaded the Commonwealth met its bur-

---

[5] As we pointed out in *Holton*: "Due process prohibits the evidentiary use of a criminal defendant's incriminating statements unless it is first established that those statements were 'the product of a rational intellect and a free will.' Lynumn v. Illinois, 372 U.S. 528, 83 S. Ct. 917 (1963), and Townsend v. Sain, 372 U.S. 293, 83 S. Ct. 745 (1963). The determination of whether or not such evidence meets these required standards depends on a consideration of the 'totality of the circumstances.' Davis v. North Carolina, 384 U.S. 737, 86 S. Ct. 1761 (1966) ; Blackburn v. Alabama, 361 U.S. 199, 80 S. Ct. 274 (1960) ; Lyons v. Oklahoma, 322 U.S. 596, 64 S. Ct. 1208 (1944) ; and Commonwealth ex rel. Gaito v. Maroney, 422 Pa. 171, 220 A. 2d 628 (1966). And the accused's physical and mental condition must be considered, for sickness or ill health may well influence his will to resist and make him prone to overbearing and improper questioning. Reck v. Pate, 365 U.S. 433, 81 S. Ct. 1541 (1961). For the inquiry as to the voluntariness of a defendant's incriminating statements cannot be narrowed to a consideration of whether or not the police resorted to physical abuse in procuring them; equally relevant on the issue of voluntariness is the determination of whether or not the accused's will was overborne at the time he made the statements. Reck v. Pate, supra." Id at 17, 247 A. 2d at 231.

den of establishing his incriminations were the product of a free and unconstrained will.

Furthermore, we find that important corroborative evidence as to Davenport's physical and mental state at the time the statement was secured was erroneously excluded at the suppression hearing. At the suppression hearing, Davenport's counsel attempted to introduce testimony to show a relationship between the convulsion suffered by Davenport and his state of mind when the challenged statement was given. This testimony was to be elicited from a graduate-physician who examined Davenport in a hospital on June 26th. At the time of the examination, the physician was an intern in Jefferson Hospital in Philadelphia. At the time of trial, he was serving his residency in the same institution. The hearing court sustained the Commonwealth's objection to this witness's testimony on the basis he was not a qualified expert. The mere fact the witness was not licensed to practice medicine in Pennsylvania did not ipso facto render him incompetent as a matter of law. See *Clark v. Horowitz*, 293 Pa. 441, 143 A. 131 (1928).

Judgment reversed and a new trial is ordered.

Mr. Justice POMEROY concurs in the result.