928 A.2d 973

**Beverly WEXLER, Appellant**

v.

**Paul J. HECHT, M.D., and Donald W. Mazur, M.D., Appellees.**

Supreme Court of Pennsylvania.

Resubmitted April 13, 2007.

Decided June 5, 2007.

Lee S. Bender, Philadelphia, for Beverly Wexler, appellant.

Clifford Alan Rieders, Rieders, Travis, Humphrey, Harris, Waters & Waffenschmidt, Williamsport, for amicus curiae, Pa. Trial Lawyers Ass'n.

Christine Renee Guiliano, Thomas M. Savon, Naulty, Scaricamazza & McDevitt, L.L.C., Philadelphia, for Paul J. Hecht, M.D., and Donald W. Mazur, M.D., appellees.

Robert B. Hoffman, Wolf, Block, Schorr And Solis–Cohen, Harrisburg, for Pa. Medical Soc., appellee amicus curiae.

Beatrice O'Donnell, Helena I. Poch Ciechanowski, Duane Morris, L.L.P., Philadelphia, for Donald Maron, D.P.M., et al., appellees amici curiae.

BEFORE: CAPPY, C.J., CASTILLE, SAYLOR, EAKIN, BAER, BALDWIN and FITZGERALD, JJ.

## *OPINION*

Justice SAYLOR.

The dispositive issue in this appeal is whether, under the Medical Care Availability and Reduction of Error Act, a podiatrist is competent to testify as an expert witness concerning the applicable standard of care in a medical malpractice action advanced against an orthopedic surgeon.

The plaintiff, Beverly Wexler ("Appellant"), commenced the present action in 1999 against Paul J. Hecht, M.D., a medical doctor certified by the American Board of Orthopaedic Surgery, and a colleague who was later dismissed from the action. The complaint asserted a claim of medical malpractice occurring during the course of treatment for a bunion. Appellant alleged that she experienced post-operative complications following surgery performed by Dr. Hecht, including pain and swelling on the top of her foot. Further, she averred that she was unable to walk without crutches, although she was led to believe that this would not be the case. According to the complaint, Appellant ultimately underwent corrective surgery by a podiatrist to repair the continuing problems with her foot, but she continued to experience some residual pain, discomfort, and scarring. Dr. Hecht was alleged to have breached the applicable standard of medical care, and monetary damages were sought.

Pursuant to a pre-trial order, Appellant submitted the *curriculum vitae* and expert report of Lawrence Lazar, D.P.M. (Doctor of Podiatric Medicine), specializing in podiatric surgery. Dr. Lazar opined that Dr. Hecht deviated from the ordinary standard of care in the surgery; that he provided substandard post-surgical care; and that these alleged deviations were the direct and proximate cause of Appellant's medical complaints.

In November 2002, Dr. Hecht filed a motion *in limine* seeking to preclude Dr. Lazar from testifying at trial on the ground that, as a podiatric surgeon, he was not competent to testify concerning the standard of care pertaining to an orthopedic surgeon. Dr. Hecht invoked the liberal common law standard governing the qualifications or competency of an expert witness, namely a reasonable pretension to specialized knowledge in the subject matter of the inquiry, *see Bennett v. Graham*, 552 Pa. 205, 210, 714 A.2d 393, 395 (1998), as well as the more stringent standard set forth in the then-newly-enacted Medical Care Availability and Reduction of Error Act.[1] In response, Appellant advanced the position that Dr. Lazar was competent under the both standards and requested a hearing at which he could elaborate on his basis for knowledge. In the alternative, Appellant requested an opportunity to procure a new expert because the motion was filed on the eve of trial and invoked a statutory enactment that post-dated the commencement of the malpractice action.

The common pleas court granted Dr. Hecht's motion *in limine,* initially indicating in an oral ruling that it was applying the common-law standard. *See* N.T., December 17, 2002, at 22. The court rejected Appellant's argument that, in all pertinent respects, the standard of care pertaining to bunionectomies and/or osteotomies was the same for both podiatrists and orthopedic surgeons, reasoning, instead, that podiatry and orthopedic medicine represented two entirely different schools of thought and practice. The court also denied Appellant's request for a continuance, considering itself bound by a

1. Act of March 20, 2002, P.L. 154, No. 13 (as amended 40 P.S. §§ 1303.101–1303.910) (the "MCARE Act").

decision previously made by a motions judge.[2] Finally, on Dr. Hecht's motion, the court entered summary judgment in the doctor's favor, as Appellant lacked essential testimony regarding the governing standard of care to support her medical malpractice claims.

Appellant appealed the entry of the adverse judgment, and the common pleas court issued an opinion under Rule of Appellate Procedure 1925(a). There, in contrast to its prior ruling, the common pleas court rested its decision primarily upon the MCARE Act. In particular, the court couched its opinion in terms of four provisions of the enactment's Section 512: 1) Section 512(a), precluding, *inter alia,* the presentation of an expert medical opinion in a medical professional liability action against a physician unless the witness "possesses sufficient education, training, knowledge and experience to provide credible, competent testimony," 40 P.S. § 1303.512(a); 2) Section 512(b)(1), requiring an expert testifying on a medical matter to possess an unrestricted physician's license to practice medicine, 40 P.S. § 1303.512(b)(1); 3) Section 512(c)(1), requiring an expert testifying as to a physician's standard of care to be substantially familiar with the applicable standard for the specific care at issue as of the time of the alleged breach, 40 P.S. § 1303.512(c)(1); and 4) Section 512(c)(2), requiring an expert testifying as to a physician's standard of care to practice in the same subspecialty as the defendant physician, or in a subspecialty that has a substantially similar

2. The underlying basis for the denial of the continuance is undeveloped as of record, and Appellant has not presented a challenge to the ruling in her statement of matters complained of on appeal under Rule of Appellate Procedure 1925(b), or in her questions presented on appeal as required under Rule 2116. Rather, all questions that she presents are explicitly centered on the correctness of the decision to preclude Dr. Lazar's expert witness testimony. Accordingly, any challenge to the denial of the continuance is waived. *See* Pa.R.A.P. 2116 ("[O]rdinarily no point will be considered which is not set forth in the statement of questions involved or suggested thereby."); *Commonwealth v. Castillo,* 585 Pa. 395, 401–03, 888 A.2d 775, 779–80 (2005) (reaffirming the rule that questions not raised in a statement of matters complained of on appeal are waived, and explaining that the purpose of a Rule 1925(b) statement is to ensure development of the basis supporting trial court rulings).

standard of care for the specific care at issue, 40 P.S. § 1303.512(c)(2).[3]

Of particular relevance to our decision here, with regard to Section 512(b)(1)'s requirement of an unrestricted physician's license to practice medicine, the common pleas court observed that Dr. Lazar never attended a medical school proper, but rather, received his degree from a Pennsylvania school of podiatric medicine, the curriculum of which is limited by statute. *See* 63 P.S. § 42.7 ("The curriculum taught at schools of podiatric medicine and surgery shall be confined to subjects covered by the definition of podiatric medicine as contained in this act."). The court further developed that the practice of podiatric medicine itself is limited to the diagnosis and treatment of the foot and anatomical structures of the leg governing the functions of the foot, including incidental administration and prescription of drugs. *See* 63 P.S. § 42.2(a). Additionally, the court highlighted that podiatrists are licensed through a different regulatory body, the State Board of Podiatry, than medical doctors, who are licensed through the State Board of Medicine. *Compare* 63 P.S. § 42.2(b), *with* 63 P.S. § 422.2. Finally, the court noted that, in its central definition of "health care provider," the MCARE Act separately delineates "physicians" and "podiatrists," thus, from the court's perspective, expressly differentiating between the two categories of professionals. Since the court concluded that Dr. Lazar was not a physician holding an unrestricted license to practice medicine, he was unqualified under Section 512(b)(1) to render an opinion concerning the applicable standard of care pertaining to a medical doctor, such as orthopedic surgeon Dr. Hecht.

The Superior Court affirmed in a divided, published opinion, concluding that the trial court had not abused its discretion by granting Dr. Hecht's motion to exclude Dr. Lazar's testimony

3. The requirements of Section 512(b)(1) and (c)(2) are waivable, in the sound discretion of the common pleas court, subject to specified conditions, *see* 40 P.S. § 1303.512(b), (e), except that the statute does not provide for such waiver of the requirement to possess an unrestricted physician's license to practice medicine relative to testimony concerning the applicable standard of care. *See* 40 P.S. § 1303.512(b).

under either the common law standard or that pertaining under the MCARE Act. *See Wexler v. Hecht,* 847 A.2d 95 (Pa.Super.2004). With regard to the latter, the Superior Court majority credited, *inter alia,* the common pleas court's position that Dr. Lazar's testimony was foreclosed under the MCARE Act's requirement that a testifying expert must possess an unrestricted physician's license to practice medicine. *See id.* at 103 (citing 40 P.S. § 1303.512(b)(1)). Referencing various statutory definitions defining "physicians" and "medical doctors" and distinguishing them from references to podiatrists, the majority concluded that Dr. Lazar holds no such license.[4] Therefore, it agreed with the common pleas court's holding that his testimony was inadmissible.

The Superior Court majority also rejected an argument advanced by Appellant that the MCARE Act should not apply in light of its having taken effect after the filing of her complaint. The majority reasoned that the Act by its terms became effective on or about May 20, 2002 and, therefore, was in effect for approximately seven months before the common pleas court's ruling excluding Dr. Lazar's testimony. Further, the court observed that Section 512 contains no limitations suggesting that it should be applied only to causes of action arising after the effective date of the MCARE Act, as are attached to various other provisions of the enactment. *See id.* at 101 (citing 40 P.S. § 1303.513, Historical and Statutory Note; 40 P.S. § 1303.516, Historical and Statutory Note).

Finally, the Superior Court majority rejected Appellant's argument that the common pleas court should have entertained testimony from Dr. Lazar before ruling on the admissibility of his opinion testimony. In this regard, the majority

4. *See Wexler,* 847 A.2d at 103 (citing 1 Pa.C.S. § 1991 (defining "physician" in relevant part as a person licensed "to engage in the practice of medicine and surgery in all *its* branches" within the scope of enactments regulating the practice of medicine generally and osteopathic medicine); 63 P.S. § 422.2 (defining "physician" as a "medical doctor or doctor of osteopathy" and "medical doctor" as one who is licensed by the State Board of Medicine); 63 P.S. §§ 42.1–42.21c (reflecting that podiatrists are licensed by the State Board of Podiatry); 40 P.S. § 1303.103 (separately delineating the categorizations of "physician" and "podiatrist" within the definition of "health care provider")).

stressed that it did not condone the practice of relying upon an expert's *curriculum vitae* in determining competency, and that the better practice was for trial courts to take evidence directly from the expert before ruling. *See Wexler*, 847 A.2d at 105 n. 7. Nevertheless, the majority reasoned that Dr. Lazar's report suggested that he had only remote familiarity with the standard of care governing orthopedic medical practice, and he failed to disclose any basis for rendering an opinion concerning the standard relative to the post-operative treatment. *See id.* at 104–05. In the circumstances, the majority concluded that the common pleas court did not abuse its discretion.

Judge Johnson authored the dissent, taking the position that Dr. Lazar possessed sufficient qualifications to meet the common law requirements for expert testimony. *See Wexler*, 847 A.2d at 106 (Johnson, J., dissenting). Further, the dissent differed with the majority's application of the MCARE Act's standards, indicating that such retroactive application to a case instituted prior to the Act's effective date is prohibited by both statute and common law. In this regard, Judge Johnson observed that the Statutory Construction Act provides that "no statute shall be construed to be retroactive unless clearly and manifestly so intended by the General Assembly." 1 Pa.C.S. § 1926. While Judge Johnson acknowledged that "legislation concerning purely procedural matters will be applied not only to litigation commenced after its passage, but also to litigation existing at the time of passage," *Morabito's Auto Sales v. Commonwealth, Dep't of Transp.*, 552 Pa. 291, 295, 715 A.2d 384, 386 (1998), he reasoned that Section 512 cannot be considered purely procedural, and, therefore, concluded that it could not be applied retroactively to this case. *See Wexler*, 847 A.2d at 112 (Johnson, J., dissenting) (positing that Section 512, "works a seismic shift in the evidentiary landscape of medical malpractice cases" by " 'rais[ing] the bar' on the character of proof required of a plaintiff to vindicate a substantive right" and thus, cannot be considered "procedural, purely or otherwise"). Finally, the dissent took the position that the trial court erred by refusing to permit Dr. Lazar to

testify at the *in limine* hearing, and in doing so, "refused the only testimony offered to determine what, if any, overlap exists between the respective doctors' expertise and practice," making it impossible to "properly conclude that the proffered expert witness was not qualified to testify against the defendant." *Id.* at 105.

Our review in the present matter, entailing the interpretation of various statutes and the application of legal principles, is plenary.

## I. Applicability of the MCARE Act

Regarding the applicability of the MCARE Act, as in the Superior Court, Appellant presently advances the position that application of the competency standard under the MCARE Act to her action against Dr. Hecht would represent an impermissible, retroactive application of new law. In this regard, like Judge Johnson, Appellant references the admonition in Section 1926 of the Statutory Construction Act that no statute is to be construed to be retroactive unless clearly and manifestly so intended by the General Assembly. *See* 1 Pa.C.S. § 1926.

Dr. Hecht relies on the MCARE Act's prescription that Section 512 was to become effective sixty days after its enactment, *see* Act of March 20, 2002, P.L. 154, No. 13 § 5108, couching this specification as an express statutory directive to apply the statute to pending litigation.[5] Further, Dr. Hecht observes that the Superior Court has regularly so applied the enactment. *See, e.g., Weiner v. Fisher,* 871 A.2d 1283, 1284–85 (Pa.Super.2005); *Bethea v. Philadelphia AFL–CIO Hosp. Ass'n,* 871 A.2d 223, 225–26 (Pa.Super.2005) (citing *Wexler,* 847 A.2d at 101). Dr. Hecht also notes that, in determining whether the issue of retroactivity is truly involved, courts have concentrated on whether the new law gives a previous transac-

5. Dr. Hecht's *amici* also note that a number of other provisions of the MCARE Act were expressly made applicable only to causes of action arising on or after the date of the MCARE Act's enactment. *See* Act of March 20, 2002, P.L. 154, No. 13 § 5105(b) ("Sections 504(d)(2), 505(e), 508, 509, 510, 513 and 516 shall apply to causes of action which arise on or after the effective date of this section.").

tion a different legal effect than ascribed under the prior law. *See, e.g., Creighan v. City of Pittsburgh,* 389 Pa. 569, 575–76, 132 A.2d 867, 871 (1957) ("[A] statute is not regarded as operating retroactively because of the mere fact that it relates to antecedent events, or draws upon antecedent facts for its operation.") (citation omitted); *McMahon v. McMahon,* 417 Pa.Super. 592, 601, 612 A.2d 1360, 1364 (1992). According to Dr. Hecht, the application of the MCARE Act's expert competency standard to pending litigation should be regarded as prospective, as it does not alter a plaintiff's substantive burden of proof or entitlement to relief, but rather, merely regulates the manner of proof.[6] Dr. Hecht's position in this regard is developed in greater detail by his *amici,* the Pennsylvania Medical Society, Donald Maron, DPM, AFL–CIO Hospital Association, and John T. Irwin, MD.[7]

Certainly, this Court adheres to the rule of statutory construction highlighted by Appellant requiring a finding of clear and manifest intent by the Legislature to support retrospective application of an enactment. We agree, however, with Dr. Hecht that the adjustment of the evidentiary standard at hand relative to a future trial, albeit of an action pending as of the time of the adjustment, should not be construed as a retroactive application. In this regard, we find that Judge Beck's explanation set forth in *Warren v. Folk,* 886 A.2d 305 (Pa.Super.2005), provides an apt clarification of the governing principles.

In *Warren,* the plaintiff in a medical malpractice action challenged the constitutionality of the requirement of the filing of a certificate of merit under Rule of Civil Procedure 1042.3, when the alleged malpractice occurred prior to the 2003

**6.** Dr. Hecht also contends that Appellant's argument concerning retroactive application is waived as it is underdeveloped in Appellant's brief. While Appellant's argument is brief, however, she does expressly invoke Section 1926 of the Statutory Construction Act and Judge Johnson's dissenting opinion in support of an argument that Section 512 of the MCARE Act should not be applied to her action. We find this argument sufficient to warrant our review of the matter.

**7.** Appellant's *amicus,* the Pennsylvania Trial Lawyer's Association, does not advance a position on this issue.

effective date of the rule. The Superior Court disagreed with the plaintiff's assertion that such application represented an impermissible, retroactive one. Judge Beck reasoned that a rule or statute does not operate retrospectively merely because it is applied in a case that arises from conduct that preceded its promulgation or alters expectations deriving from prior laws. *See Warren,* 886 A.2d at 308 (citing *Landgraf v. U.S.I. Film Products,* 511 U.S. 244, 269–70, 114 S.Ct. 1483, 1499, 128 L.Ed.2d 229 (1994)). Rather, she indicated, "the court must ask whether the new provision attaches new legal consequences to events completed before its enactment." *Id.* (quoting *Landgraf,* 511 U.S. at 269–70, 114 S.Ct. at 1499). Judge Beck observed that this Court has expressly considered the issue of retroactivity in terms of whether or not the rule or statute in question affects vested rights, or rights that "so completely and definitely belong to a person that [they] cannot be impaired or taken away without the person's consent." *Id.* (quoting *In re R.T.,* 778 A.2d 670, 679 (Pa.Super.2001) (quoting BLACK'S LAW DICTIONARY 1324 (7th ed. 1999))). She reasoned that Rule 1042.3 merely added a procedural requirement for going forward with a suit, designed to provide some assurance that the claims are based on arguably meritorious assertions, and did not infringe on any vested right. *See id.* at 309 ("To be a retroactive application to appellant's suit, Rule 1042.3 would have to give the alleged incidents of malpractice a new legal effect—*i.e.,* one that is different from their legal effect under the rules existing at the time the incidents occurred. This is not the case." (citations omitted)).

Similarly, we conclude that the delineation of requirements governing the presentation of expert witness testimony that are not unduly burdensome does not alter vested rights of the parties or give material antecedent events a different legal effect, assuming the affordance of adequate time for preparation and adjustment.[8] Moreover, in relation to Section

8. Certainly, we would consider the application of new evidentiary standards to a trial that has been concluded a retrospective application. Here, however, the Legislature made Section 512 effective sixty days after its enactment. *See* Act of March 20, 2002, P.L. 154, No. 13 § 5108. Where, as here, there is no challenge relating to the timing of

512(b)(1) of the MCARE Act, there was no vested entitlement under Pennsylvania common law to present expert testimony in a malpractice action against a medical doctor from a witness who does not possess an unrestricted physician's license; rather, matters involving the competency of an expert witness traditionally have been committed to the sound discretion of the trial courts.[9]

In his dissenting opinion, Mr. Justice Castille describes the present application of Section 512 of the MCARE Act as "unlawfully retroactive." *See, e.g.*, Dissenting Opinion, at 134, 928 A.2d at 982. The dissent posits that Section 512 reflects a purposeful effort on the part of the General Assembly to extinguish some subset of legitimate causes of action (as presumably the dissent would agree that there is no vested entitlement to a particular modalities for advancing frivolous ones), by imposing a stricter set of evidentiary requirements, which the corresponding subset of plaintiffs will be unable to meet. *See id.* at 136–38, 928 A.2d at 984–85. In fact, however, as the dissent otherwise acknowledges, the Legislature has

the effective date establishing unfairness as applied in the circumstances presented in a particular instance of litigation, *see supra* note 2, we consider the sixty-day grace period to provide reasonable opportunity for adjustment and preparation.

9. Along these lines, the entire Rules of Evidence promulgated by this Court are generally applicable to "trials, hearings and proceedings covered by the Pennsylvania Rules of Evidence which begin on or after ... the effective date of said rules," Pa.R.E. 101, Historical Notes, and not merely to actions that were commenced after the effective date. Parenthetically, the determination concerning whether a statute is being retroactively applied has been sometimes couched in terms of whether or not the statute addresses "purely procedural" matters. *See, e.g., Morabito's Auto Sales*, 552 Pa. at 295, 715 A.2d at 386. The Court has recognized, however, that the line of demarcation between procedural and substantive matters is frequently difficult to discern. *See id.* ("The demarcation between substantive and procedural laws is ... at times shadowy and difficult to determine."); *cf. City of Philadelphia v. Civil Serv. Comm'n*, 583 Pa. 413, 422, 879 A.2d 146, 151–52 (2005) ("The attempt to devise a universal principle for determining whether a rule is inherently procedural or substantive in nature has met with little success in the history of our jurisprudence."). We therefore believe that consideration of the nature and degree of impact on vested rights as discussed above offers the more useful frame of reference in this setting.

made manifest in the MCARE Act its intention to "ensure a fair legal process and reasonable compensation for persons injured due to medical negligence in this Commonwealth." 40 P.S. § 1303.102. Further, there is simply no argument or proffer in this case that would suggest that there is a dearth of orthopedic surgeons in Pennsylvania willing to testify in support of legitimate causes of action pursued by plaintiffs suffering injury or loss on account of medical negligence in such field. In any event, Appellant has never asserted that she could not have obtained an expert witness qualified under the MCARE Act. Therefore, even if the class of plaintiffs suggested by the dissent existed, there would be no basis to support a conclusion that Appellant is within that suggested class.[10]

The dissent also supports its position that application of Section 512 of the MCARE Act to pending cases is unduly burdensome with a timeline of this case as it unfolded in the common pleas court. *See* Dissenting Opinion at 141, 928 A.2d at 987. Notably absent from the timeline, however, is the date of the passage of the MCARE Act, nine months before the common pleas court's ruling excluding Dr. Lazar's testimony. Moreover, the assertion of unfairness depends critically on the propriety of the trial court's decision to deny a continuance to permit Appellant to secure an expert witness qualifying under Section 512. *See id.* at 141–43, 928 A.2d at 987–88. However, because Appellant did not challenge the denial of her request for a continuance in her statement of matters complained of on appeal, there is nothing in the record to

10. The dissent also endorses Judge Johnson's position that Section 512 "effectively recasts the standard by which the plaintiffs must prove their entitlement to relief on a vested cause of action[.]" Dissenting Opinion, at 141, 928 A.2d at 987 (quoting *Wexler,* 847 A.2d at 109 (Johnson, J., dissenting)). We disagree. None of the provisions of the MCARE Act set out the applicable standard of care governing negligence claims. Therefore, a plaintiff must still demonstrate precisely what is required by the common law, *i.e.,* that the defendant failed to exercise that degree of skill, learning and care normally possessed and exercised by the average physician who devotes special study and attention to the diagnosis and treatment of diseases within the specialty. *See, e.g., Joyce v. Boulevard Physical Therapy & Rehabilitation Center, P.C.,* 694 A.2d 648, 654 (Pa.Super.1997).

reflect the trial court's reasons supporting its decision in this regard. Accordingly, as we have previously explained, a direct challenge to that decision is presently unavailable. *See supra* note 2. We also decline to do indirectly that which cannot be done directly by recasting such challenge into the essential lynchpin of an argument that Section 512 is unlawful as applied to the circumstances of this case.[11]

■ We hold, therefore, that Section 512 applies at trials of medical malpractice actions occurring after its effective date, again, assuming the affordance of adequate time for preparation and adjustment. *Accord Bethea,* 871 A.2d at 226.

## II. Application of the MCARE Act's Competency Standard

Our review of the specific requirements of Section 512 focuses on the directive of subsection (b)(1) that an expert witness testifying about the applicable standard of care must possess an unrestricted physician's license to practice medicine, *see* 40 P.S. § 1303.512(b)(1), as we find this provision dispositive.

Appellant contends that Dr. Lazar meets the requirement of Section 512(b)(1) by virtue of his license to practice podiatric medicine. She points to the definition of "physician" in Section 1991 of the Statutory Construction Act as "an individual licensed under the laws of this Commonwealth to engage in the practice of medicine and surgery in all its branches . . .," 1 Pa.C.S. § 1991, characterizing podiatry as simply one branch of medicine. Appellant also references a definition from a medical dictionary suggesting that a physician is one graduated from a college of medicine or osteopathy and licensed by the appropriate board.

11. In this regard, certainly the Legislature, in enacting the MCARE Act, was entitled to take into account that ordinary court procedures, such as the availability of a continuance in appropriate circumstances, would ensure the fair and just administration of trials conducted under its terms. As such, the timeline commentary is better suited to a review of the trial court's decision to deny a continuance (were it available) than it is to a broader scale determination that Section 512 of the MCARE Act is "unlawfully retroactive."

Dr. Hecht's argument follows the line of reasoning advanced by the common pleas court, noting in particular that the MCARE Act and many other statutes expressly distinguish between physicians and podiatrists. *See supra* note 4 and accompanying text. Dr. Hecht and his *amici* observe that Appellant's recitation of the definition of "physician" as specified in the Statutory Construction Act omits significant detail, in that licensure is required "within the scope of the act of July 20, 1974, known as the Medical Practice Act of 1974, and its amendments, or in the practice of osteopathic medicine and surgery within the scope of the act of October 5, 1978, known as the Osteopathic Medical Practice Act, and its amendments." 1 Pa.C.S. § 1991 (citations omitted).

■■■■ We agree with Dr. Hecht, his *amici*, the common pleas court, and the Superior Court on this point as well. Although clearly there is some overlap in practical application, it is evident from the panoply of referenced legislation that the Legislature is well aware of the clear and formal line of demarcation between regulation of the practice of medicine generally and regulation of the practice of podiatric medicine. Thus, we find that the General Assembly's reference in Section 512(b)(1) to an expert "possessing an unrestricted physician's license to practice medicine" unambiguously denotes a medical doctor or osteopath licensed by a state board appropriate to such practices.[12] Further, since there is no provision for waiver of this requirement relative to expert testimony concerning the applicable standard of care, *see supra* note 3, the common pleas court appropriately concluded that Dr. Lazar was unqualified, under the MCARE Act, to provide evidence essential to the support of Appellant's action.

### III. The Refusal to Conduct a Hearing

Appellant also maintains her contention that the trial court erred by failing to permit Dr. Lazar to testify regarding his

12. Parenthetically, the legislative history of the MCARE Act suggests that the General Assembly employed the expert competency standard proposed by the Pennsylvania Medical Society in Section 512. *See House Legislative Journal*, February 13, 2002, at 301.

qualifications at the hearing on Dr. Hecht's motion *in limine,* despite Appellant's urging. Since, however, it is undisputed that Dr. Lazar is not licensed as a physician to practice medicine by the State Board of Medicine or any analogue, the common pleas court did not err in excluding his opinion testimony concerning the applicable standard of care on the existing record.[13]

The order of the Superior Court is affirmed.

Chief Justice CAPPY and Justices EAKIN and FITZGERALD join the opinion.

Justice CASTILLE files a dissenting opinion in which Justice BAER and Justice BALDWIN join.

Justice CASTILLE, dissenting.[1]

As framed by the Majority Opinion, the substantive issue before the Court today is whether, under the Medical Care Availability and Reduction of Error Act, ("MCARE Act" or "Act"), Act of March 20, 2002, P.L. 154, No. 13 (*as amended*

**13.** The dissent also perceives unfairness arising from the trial court's decision to broaden the basis for its decision to grant summary judgment in its opinion under Appellate Rule 1925(a), which purportedly "deprived the parties of any opportunity to develop a record responsive to [the MCARE Act's] provisions." *See* Dissenting Opinion at 143, 928 A.2d at 988 (Castille, J.) (quoting *Wexler,* 847 A.2d at 109 (Johnson, J., dissenting)). In the first instance, however, Appellant was certainly aware of the potential relevance of the MCARE Act to the summary judgment decision which she challenged on appeal, because she specifically raised Dr. Lazar asserted qualification under the MCARE Act in her statement of matters complained of on appeal under Appellate Rule 1925(b). Particularly as Appellant raised the issue, there is nothing untoward in the trial court's approach of resolving her argument in its opinion in response.

Moreover, there has never been a proffer of evidence in this case that Dr. Lazar, who, again, does not possess an unrestricted physician's license, could possibly meet such requirement of the MCARE Act to testify regarding the medical standard of care applicable to an orthopedic surgeon. Therefore, there is no injustice resulting from the absence of an opportunity to develop a record relevant to the MCARE Act's provisions.

**1.** For much of this dissent, I am indebted to former Supreme Court Justice Sandra Schultz Newman, who had drafted a proposed dissent prior to her departure from this Court.

40 P.S. §§ 1303.101–1303.910), "a podiatrist is competent to testify as an expert witness concerning the applicable standard of care in a medical malpractice action advanced against an orthopedic surgeon." Majority Op. at 120, 928 A.2d at 974. However, in my view, there is a preliminary and controlling question of retroactivity: *i.e.*, whether the evidentiary issue is governed by the MCARE Act standard or the common law standard for assessing the qualifications of an expert witness, a standard reflected in Pa.R.E. 702. For the reasons that follow, I believe that application of the MCARE Act standard is unlawfully retroactive as it affects, to a significant extent, the substantive rights of the parties. Moreover, applying the prevailing common law evidentiary standard, I believe that an expert podiatrist plainly is qualified to testify regarding a bunionectomy and post-surgical care. Accordingly, I respectfully dissent.

Rule 702 of this Court's Rules of Evidence states the settled common law standard governing the admissibility of expert testimony, and provides as follows:

> If scientific, technical or other specialized knowledge beyond that possessed by a layperson will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training or education may testify thereto in the form of an opinion or otherwise.

Pa.R.E. 702. This standard is identical to F.R.E. 702, with the single exception of the "beyond that possessed by a layperson" additional restriction. *See* Pa.R.E. 702 (comment). "Aid to the trier of fact is the basic test for admissibility of expert testimony ..." under this standard. STRONG ET AL., 1 McCORMICK ON EVIDENCE, § 13, 59–60 n. 14 (5th ed. 1999) (construing F.R.E. 702). This traditional test for qualification of expert witnesses has been described as a liberal one. *See, e.g., Commonwealth v. Marinelli,* 570 Pa. 622, 810 A.2d 1257, 1267 (2002); *Miller v. Brass Rail Tavern,* 541 Pa. 474, 664 A.2d 525, 528 (1995).

In extinguishing the plaintiff/appellant's cause of action in this medical malpractice case, both the Superior Court majori-

ty and the Majority Opinion rely upon the expert witness qualification standard set forth in the MCARE Act. With respect to expert testimony, the MCARE Act works a very deliberate revolution, in favor of medical malpractice defendants, adopting a heightened standard of admissibility for medical expert testimony. Thus, Section 1303.512 of the Act reads as follows:

§ 1303.512. Expert qualifications

(a) GENERAL RULE.—No person shall be competent to offer an expert medical opinion in a medical professional liability action against a physician unless that person possesses sufficient education, training, knowledge and experience to provide credible, competent testimony and fulfills the additional qualifications set forth in this section as applicable.

(b) MEDICAL TESTIMONY.—An expert testifying on a medical matter, including the standard of care, risks and alternatives, causation and the nature and extent of the injury, must meet the following qualifications:

(1) Possess an unrestricted physician's license to practice medicine in any state or the District of Columbia.

(2) Be engaged in or retired within the previous five years from active clinical practice or teaching.

Provided, however, the court may waive the requirements of this subsection for an expert on a matter other than the standard of care if the court determines that the expert is otherwise competent to testify about medical or scientific issues by virtue of education, training or experience.

(c) STANDARD OF CARE.—In addition to the requirements set forth in subsections (a) and (b), an expert testifying as to a physician's standard of care also must meet the following qualifications:

(1) Be substantially familiar with the applicable standard of care for the specific care at issue as of the time of the alleged breach of the standard of care.

(2) Practice in the same subspecialty as the defendant physician or in a subspecialty which has a substantially

similar standard of care for the specific care at issue, except as provided in subsection (d) or (e).

(3) In the event the defendant physician is certified by an approved board, be board certified by the same or a similar approved board, except as provided in subsection (e).

(d) CARE OUTSIDE SPECIALTY.—A court may waive the same subspecialty requirement for an expert testifying on the standard of care for the diagnosis or treatment of a condition if the court determines that:

(1) the expert is trained in the diagnosis or treatment of the condition, as applicable; and

(2) the defendant physician provided care for that condition and such care was not within the physician's specialty or competence.

(e) OTHERWISE ADEQUATE TRAINING, EXPERIENCE AND KNOWLEDGE.—A court may waive the same specialty and board certification requirements for an expert testifying as to a standard of care if the court determines that the expert possesses sufficient training, experience and knowledge to provide the testimony as a result of active involvement in or full-time teaching of medicine in the applicable subspecialty or a related field of medicine within the previous five-year time period.

40 P.S. § 1303.512.

Because the MCARE Act did not go into effect until after the alleged malpractice and after commencement of the case *sub judice,* the first issue is whether the Act even applies. Section 512 became effective on May 19, 2002, sixty days after its March 20, 2002 enactment date. The Superior Court upheld the use of the MCARE Act standard, noting that "[c]ertain sections of the MCARE Act apply only to 'causes of action which arise on or after the effective date' of those sections[,] ... [whereas] [n]o such caveat applies to Section 1303.512." *Wexler v. Hecht,* 847 A.2d 95, 101 (Pa.Super.2004) (citations omitted).

Section 1926 of the Statutory Construction Act states that no statute is to be construed to be retroactive absent a clearly manifested intent to that effect by the General Assembly. *See* 1 Pa.C.S. § 1926. The General Assembly did not expressly state that Section 512 was to apply retroactively. However, this fact does not end the inquiry. Application of the new standard to a trial arising from conduct occurring before the operative date of the Act could be said to be unlawfully retroactive only if it had a prohibited **effect** for retroactivity purposes. As this Court has noted:

> It is manifest, however, that this principle [i.e., the Section 1926 directive respecting retroactivity] becomes pertinent only after it has been determined that a proposed operation of a statute would indeed be retrospective. In this regard, our courts have held that a statute does not operate retrospectively merely because some of the facts or conditions upon which its application depends came into existence prior to its enactment.

*Gehris v. Commonwealth, Dep't of Transp.*, 471 Pa. 210, 369 A.2d 1271, 1273 (1977). Thus, under this Court's precedent, "Retroactive laws have been defined as those which take away or impair vested rights acquired under existing laws, create new obligations, impose a new duty, or attach a new disability in respect to the transaction or consideration already past." *Nicholson v. Combs*, 550 Pa. 23, 703 A.2d 407, 411 (1997) (citing BLACK'S LAW DICTIONARY 1184 (6th ed. 1990)).

*Alexander v. Commonwealth, Dep't of Transp.*, 583 Pa. 592, 880 A.2d 552, 559 (2005).

Furthermore, this Court has held that statutes affecting purely procedural matters may be applied to litigation existing at the time the statute was enacted, without being deemed unlawfully retroactive, but that an application affecting substantive rights is more problematic. *See, e.g., Morabito's Auto Sales v. Commonwealth, Dep't of Transp.*, 552 Pa. 291, 715 A.2d 384, 386 (1998); *accord Commonwealth v. Estman*, 915 A.2d 1191, 1194 (Pa.2007). Thus, the question of whether a statute violates the proscription against retroactive application

often turns on whether the legislation concerns substantive or procedural matters. This question is a difficult one, as the Majority acknowledges in explaining why it elects not to address the question in terms of substance versus procedure. Majority Op. at 129 n. 9, 928 A.2d at 979–80 n. 9. Judge Johnson aptly elaborated upon the difficulty in his dissent below:

> The demarcation between laws bearing on substantive rights and those that are "purely procedural" is notoriously vexing and has fostered disagreement amongst generations of jurists. *See Laudenberger v. Port Authority*, 496 Pa. 52, 436 A.2d 147, 150 (1981) ("The attempt to devise a universal principle for determining whether a rule is inherently procedural or substantive in nature has met with little success in the history of our jurisprudence."). " '(I)n many situations procedure and substance are so interwoven that rational separation becomes well-nigh impossible.' " *Laudenberger*, 436 A.2d at 150 (quoting *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 559, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949) (Rutledge, J., dissenting)). Accordingly, our Supreme Court has been circumspect in adopting static analytical definitions, recognizing that they "would only be useful if 'substance' and 'procedure' were two 'mutually exclusive categories with easily ascertainable contents.' " *Laudenberger*, 436 A.2d at 150 (quoting *Sibbach v. Wilson & Co.*, 312 U.S. 1, 17, 61 S.Ct. 422, 85 L.Ed. 479 (1941) (dissenting opinion of Frankfurter, J., in which Black, Douglas, and Murphy, JJ., concurred)). In attempting to "unravel this Gordian knot," *Laudenberger*, 436 A.2d at 150, the Court has cautioned against simplistic solutions[.]

*Wexler*, 847 A.2d at 111 (Johnson, J., dissenting).

This Court has often determined that statutes or rules that seem to be purely procedural on their face nevertheless may affect substantive rights. *See, e.g., Payne v. Commonwealth, Dep't of Corr.*, 582 Pa. 375, 871 A.2d 795, 802 (2005) (statute that allows court to dismiss prisoner's claim upon conclusion that allegation of indigency is untrue, the action is frivolous or defendant is entitled to raise a valid affirmative defense

affects substantive rights of prisoners); *Commonwealth v. Morris,* 565 Pa. 1, 771 A.2d 721, 738 (2001) (statute that sets forth circumstances necessary for securing stay of execution affects substantive rights). In my view, this duality plainly exists in the case *sub judice:* although Section 512 purports to address a matter affecting procedural rights, it does so in a way which directly affects, and obviously was intended to affect, the substantive rights of a litigant such as appellant. Indeed, since the General Assembly was well aware that this Court's procedural rules already addressed and established a test for expert testimony, and assuming the General Assembly did not intend to raise a separation of powers question, the statute no doubt was considered to be one affecting substantive rights. Although the Majority has set forth the opposing viewpoint in persuasive fashion, I would conclude that the statute has an unlawful retroactive effect.

It is no accident that the MCARE Act is codified in Title 40, which governs Insurance. Section 102 of the Act, which comprises the General Assembly's overall "Declaration of policy," lists, as one of the apparent purposes of the legislation, the desire to make medical professional liability insurance "obtainable at an affordable and reasonable cost" throughout the Commonwealth which, in turn, should serve the overriding purpose of making available "a comprehensive and high-quality health care system." 40 P.S. § 1303.102(1), (3). Section 512's expert witness provision is found in Chapter 5 of the Act, which is entitled "Medical Professional Liability." The additional legislative "Declaration of policy" attending this chapter notes that "[t]he General Assembly finds and declares that it is the purpose of this chapter to ensure a fair legal process and reasonable compensation for persons injured due to medical negligence in this Commonwealth." *Id.* § 1303.502. In the General Assembly's judgment, a stricter limitation on expert testimony than that which existed at common law and under judicial rules of procedure, and that which exists with respect to other experts, apparently was part of the envisioned "fair legal process" which would operate, *inter alia,* to lower the cost of medical malpractice insurance. Section 512 operates to lower the cost of insurance by simply extinguishing

those causes of action where the plaintiff cannot meet the new, and heightened, standard for assessing expert witness qualifications.

The MCARE Act was a response to a widely publicized perceived health care crisis in Pennsylvania, which included an alleged fear on the part of medical practitioners that malpractice insurance was becoming unaffordable resulting in some medical doctors opting to leave practice in the Commonwealth. Section 512 is an integral part of the legislative response. To prove a case of medical malpractice, the plaintiff generally must produce expert testimony concerning the tort elements of duty, breach, and causation. *Quinby v. Plumsteadville Family Practice, Inc.*, 589 Pa. 183, 907 A.2d 1061, 1070–71 (2006) (citation omitted). Section 512 makes the plaintiff's burden more difficult by narrowing the class of experts to whom a plaintiff may turn.[2] The causes of the perceived medical malpractice insurance crisis are complicated and multi-faceted, and the public debates surrounding the issue were heated, with medical practitioners, lawyers, politicians, and insurance companies squaring off and apportioning blame. The issue for decision in the case *sub judice* is not whether the response represented by the MCARE Act properly balanced and resolved the difficult policy issues presented, but whether Section 512 has a substantive effect on existing medical malpractice litigation, such that application to existing cases would be unlawfully retroactive.[3] In my view, Section 512 has such

---

**2.** *Cf.* Comment, *Double Checking the Doctor's Credentials: The New Medical Expert Qualification Statute of MCARE,* 67 U. Pitt. L.Rev. 661, 665–66 (2006) ("At the time of [the MCARE Act's] passage, skyrocketing insurance premiums had spawned a widely recognized health care crisis within Pennsylvania.... Section 512 is intended to narrow the field of qualified experts, with the result of limiting the admissibility of expert testimony in medical malpractice actions."). The lower courts that have reviewed sections of the MCARE Act are in significant agreement with the commentator's assessment of the effect of the provision. *See, e.g., Gartland v. Rosenthal,* 850 A.2d 671, 675 (Pa.Super.2004); *Amato v. Centre Medical and Surgical Associates, P.C.,* 2004 WL 1987427, *3 (Pa.Com.Pl.2004); *Weiner v. Fisher,* 67 Pa. D. & C.4th 1, 10 (Pa.Com.Pl.2004); *Spotts v. Small,* 61 Pa. D. & C.4th 225, 235 (Pa.Com.Pl.2003).

**3.** I should note that appellant does not challenge the authority of the General Assembly to legislate in this area, in the face of the existing

an effect. As Judge Johnson noted below, retroactive application of Section 512 of the MCARE Act "effectively recasts the standard by which the plaintiffs must prove their entitlement to relief on a vested cause of action" and "effectively 'raises the bar' on the character of proof required of a plaintiff to vindicate a substantive right." *See Wexler*, 847 A.2d at 109, 112 (Johnson, J., dissenting) (citations omitted). Therefore, like the dissent below, I would conclude that this portion of the legislation is not simply "procedural." The MCARE Act rejects and displaces centuries of common law explicating the standard for assessing expert testimony, and adopts a new standard which has the effect of insulating medical professionals from certain causes of action. In my view, Section 512 has a retroactive effect which, in the absence of legislative authorization for same, cannot be permitted to operate unfairly in this case.

The Majority holds otherwise, agreeing with appellees "that the adjustment of the evidentiary standard at hand relative to a future trial, albeit of an action pending as of the time of the adjustment, should not be construed as a retroactive application." Majority Op. at 127, 928 A.2d at 978. The Majority elaborates "that the delineation of requirements governing the presentation of expert witness testimony that are not unduly burdensome does not alter vested rights of the parties or give material antecedent events a different legal effect, assuming the affordance of adequate time for preparation and adjustment." *Id.*, at 128, 928 A.2d at 979. The Majority continues that Section 512 may apply retroactively because there is no "vested entitlement under Pennsylvania common law to present expert testimony in a malpractice action against a medical doctor from a witness who does not possess an unrestricted physician's license." *Id.*, at 129, 928 A.2d at 979.

Respectfully, I believe that the significant change in medical malpractice actions effected by Section 512—accurately de-

structure represented by the Pennsylvania Rules of Evidence and the constitutional prerogative of the Supreme Court to prescribe general rules governing practice, procedure and the conduct of all courts. *See* Pa. Const. Art. V, § 10(a).

scribed by the dissent below as a "seismic shift in the evidentiary landscape of medical malpractice cases" and fatal to the plaintiff's cause here, *Wexler*, 847 A.2d at 111 (Johnson, J., dissenting)—is such that retroactive application to existing cases is unduly burdensome. Indeed, the heightened burden was the exact legislative point in reworking the standard. Furthermore, even aside from the general effect of the change upon all malpractice cases, the procedural history of this case shows that the retroactive application of Section 512 here was oppressively burdensome, and unfairly deprived appellant of "adequate time for preparation and adjustment."

Appellant filed her complaint on November 3, 1999, and timely submitted Dr. Lazar's expert witness report in July 2001. A trial date was scheduled for December 16, 2002. On November 27, 2002, less than one month before trial and approximately six months after the effective date of the MCARE Act, appellees filed a motion *in limine*. Following appellees' filing, appellant requested a continuance to secure a new expert, but the request was denied. N.T., 12/17/02, at 3. On December 17, 2002, with a jury already impaneled, the trial court held an *in camera* conference. The court began the conference by granting appellee's motion *in limine*. Following the ruling, counsel was allowed to address the court. Appellant's counsel argued prejudice premised upon "the late filing of the motion [*in limine*], which includes reference to the new MCARE Act, which as Your Honor noticed was enacted in May." *Id.*, at 22. The court responded unequivocally that it was not basing its decision on the MCARE standard: "Let me make the record. I am not basing it upon the legislation enacted known as the MCARE Act, it's based upon common law in this area. . . . [T]he legislation is not indicative of my decision." *Id.* The court then granted appellees' motion *in limine* pursuant to the common law expert witness standard, barred Dr. Lazar's expert testimony, and granted appellees' motion for summary judgment due to appellant's failure to offer another competent expert witness.

It was only after appellant appealed, and the trial court issued its Opinion under Pa.R.A.P. Rule 1925, that the trial

court attempted to support its decision based primarily on the MCARE Act expert qualification standard. The Superior Court majority charitably described the proceedings in the trial court as marked by "procedural irregularity," *Wexler,* 847 A.2d at 101, while Judge Johnson more bluntly recognized that the trial court "effectively deprived the parties of any opportunity to develop a record responsive to [the MCARE Act's] provisions." *Id.* at 109 (Johnson, J., dissenting). Thus, the trial court in this case expelled appellant's expert on the eve of trial, refused her request for a continuance, then later justified the ruling premised upon a standard appellant never had an opportunity to satisfy. On the facts here, insulating the trial judge's ruling premised upon application of the MCARE Act standard is oppressingly burdensome.

Turning to the question of the admissibility of appellant's expert testimony under the common law, a question I would reach given my conclusion that the MCARE standard cannot lawfully apply here, I would find that appellant is entitled to relief. At common law, expert testimony is admissible as "an aid to the jury when the subject matter is distinctly related to a science, skill or occupation beyond the knowledge or experience of the average layman." *Commonwealth v. Auker,* 545 Pa. 521, 681 A.2d 1305, 1317 (1996) (citation omitted). When expert testimony is appropriate (as it certainly is in this case), a witness is qualified to testify if he has any reasonable pretension to specialized knowledge on the subject under investigation. *Miller v. Brass Rail Tavern,* 664 A.2d at 528 ("It is not a necessary prerequisite that the expert be possessed of all of the knowledge in a given field, only that he possess more knowledge than is otherwise within the ordinary range of training, knowledge, intelligence or experience.") (internal quotation marks and citations omitted).

Judge Johnson cites numerous cases in which the Superior Court has ruled that an expert witness in a medical malpractice case testifying to the proper standard of care need not have the precise qualifications of the care provider whose conduct is in question, if the expert witness has substantial familiarity with that conduct. *See Wexler,* 847 A.2d at 106–07

(Johnson, J., dissenting). Thus, the Superior Court has approved allowing a pediatrician to testify as an expert witness against an emergency room physician,[4] a physician not licensed in the United States to testify against an orthopedist,[5] and a physiatrist to testify on the appropriate standard of care for a post-operative wound by an orthopedic surgeon.[6] In my view, under the common law standard, a podiatrist clearly is qualified to testify as an expert witness in a lawsuit, such as this one, concerning a bunionectomy. A podiatrist testifying with respect to foot surgery and care is substantially similar to those cases allowing an expert to testify regarding a different specialty or subspecialty. Given the broad latitude afforded by the common law standard and the consistency of prior Superior Court rulings on the subject, I would hold that Dr. Lazar has sufficient credentials to testify about a procedure that he legally and expertly performs.[7] *See generally Miller*, 541 Pa. 474, 664 A.2d 525 (non-M.D. medical examiner and mortician may testify to cause of death); *Commonwealth v. Davenport*, 449 Pa. 263, 295 A.2d 596 (1972) (intern may testify as medical expert); *Commonwealth v. Henry*, 524 Pa. 135, 569 A.2d 929 (1990) (dentist, not forensic pathologist, may adequately testify regarding bite marks). The jury, of course, may assign what weight it chooses to the various expert witnesses based upon their competing credentials, and the

4. *See B.K. ex.rel. S.K. v. Chambersburg Hosp.*, 834 A.2d 1178, 1182 (Pa.Super.2003).

5. *See George v. Ellis*, 820 A.2d 815, 818–19 (Pa.Super.2003).

6. *See Poleri v. Salkind*, 453 Pa.Super. 159, 683 A.2d 649, 655 (1996).

7. Other jurisdictions have permitted podiatrists to testify in matters concerning orthopedic surgery, and permitted orthopedic surgeons to testify in matters concerning podiatry. *See Chadock v. Cohn*, 96 Cal. App.3d 205, 157 Cal.Rptr. 640 (1979) (podiatrist may testify as to standard of care of orthopedic surgeon performing foot surgery); *Marshall v. Yale Podiatry Group*, 5 Conn.App. 5, 496 A.2d 529 (1985) (orthopedist may testify as to standard of care of podiatrist performing foot surgery); *Sandford v. Howard*, 161 Ga.App. 495, 288 S.E.2d 739 (1982) (orthopedic surgeon may testify in action against podiatrist for negligence in treatment); *Escobar v. Allen*, 5 A.D.3d 242, 774 N.Y.S.2d 28, 29 (2004); *accord Steinbuch v. Stern*, 2 A.D.3d 709, 770 N.Y.S.2d 106, 107–08 (2003) (podiatrist may give expert opinion that physician departed from applicable standard of care in performing bunionectomy upon foundation showing sufficient knowledge of procedure).

medical defendant may highlight the differences between the specialties. But, it is an abuse of discretion to bar the testimony outright.

For the foregoing reasons, I respectfully dissent.

Justice BAER and Justice BALDWIN join this opinion.