57 A.3d 1141

**Lori A. ANDERSON, as Administratrix of the Estate of Mildred L. Anderson, Deceased, and Richard C. Anderson, Individually, Appellants,**

**v.**

**Gary L. McAFOOS, M.D., Individually and Warren Surgeons, Inc., Appellees.**

Supreme Court of Pennsylvania.

Argued Nov. 30, 2011.

Decided Dec. 18, 2012.

480

Bernard J. Hessley, Hessley Law Offices, Warren, for Lori A. Anderson, et al.

Pamela L. Shipman, Rieders, Travis, Humphrey, Harris, Waters & Waffenschmidt, Williamsport, for Appellant Amicus Curiae, Pennsylvania Association for Justice.

Peter J. Taylor, Murphy Taylor, L.L.C., Pittsburgh, for Gary L. McAfoos, M.D., et al.

Robert B. Hoffman, Eckert Seamans Cherin & Mellot, LLC, for Appellee Amicus Curiae, the Pennsylvania Medical Society.

BEFORE: CASTILLE, C.J., SAYLOR, EAKIN, BAER, TODD, McCAFFERY, ORIE MELVIN, JJ.

## *OPINION*

Justice SAYLOR.

The main issue accepted for review is whether, under requirements imposed by the General Assembly, a pathologist was competent to testify as an expert witness regarding the standard of care in a medical malpractice action asserted against a board-certified general surgeon. We also consider whether the defendant-surgeon's objection to testimony from the pathologist should have been deemed waived, since it was first asserted at trial, rather than by way of an earlier motion.

In the fall of 2001, Mildred L. Anderson manifested adverse health symptoms, and she sought treatment from Appellee, general surgeon Gary L. McAfoos, M.D.[1] Mrs. Anderson had several known medical conditions, including a blood disorder which caused excessive clotting. Over a period of about two months, Dr. McAfoos conducted medical tests, including endoscopic procedures in the esophageal and intestinal areas, and he rendered diagnoses of hiatal hernia and intestinal inflammation.

---

1. It is undisputed that, at the time of the pertinent events, Dr. McAfoos was certified by the American Board of Surgery.

On September 24, 2001, Mrs. Anderson came to the emergency room at Warren General Hospital complaining of shortness of breath and abdominal pain. Blood tests were undertaken, and the laboratory reports were suggestive of cancer. Mrs. Anderson underwent exploratory surgery, performed by Dr. McAfoos, who found a tumor at the junction of her small and large intestines, removed it along with segments of the intestines and lymph nodes, and resected the remaining intestines. Post-surgery laboratory reports indicated that Mrs. Anderson did suffer from cancer, which had advanced beyond the tumor.

For the following two weeks, Mrs. Anderson recuperated in the hospital, where she was visited by an oncologist planning cancer treatment. On the last day of her hospital stay, Mrs. Anderson's progress was assessed by Dr. McAfoos's practice associate, Thomas E. Serena, M.D., also a general surgeon, who was covering for Dr. McAfoos during his absence. Medical notes indicated that Mrs. Anderson's temperature continued to fluctuate into low-grade fever stages, and blood tests had revealed the formation of immature white blood cells. Mrs. Anderson had otherwise shown improvement in her post-surgical recovery, and she wished to go home. Dr. Serena discharged her that day, October 10, 2001, while prescribing follow-up bloodwork.

Upon her arrival at home, Mrs. Anderson experienced severe abdominal pain, and her husband returned her to the hospital immediately. Tests indicated a life-threatening disorder, and Dr. Serena undertook emergency surgery to address it. He found an intestinal perforation at or near the site of the resection, which had allowed bacteria to enter the abdominal cavity, from where it had permeated into Mrs. Anderson's bloodstream. Dr. Serena removed more segments from the intestines and performed a colostomy, but Mrs. Anderson later died from the sepsis, or her body's traumatic response to the blood infection.

In February 2002, Appellants, the administratrix of Mrs. Anderson's estate and her husband, filed the present medical malpractice action against Dr. McAfoos and his employer,

Warren Surgeons, Inc. (collectively, "Appellees").[2] The complaint (and amendments) alleged, among other things, that Dr. McAfoos and his agents breached the applicable standard of care by causing the intestinal leak, by failing to properly diagnose and treat it, and by subsequently discharging Mrs. Anderson although she manifested signs of an infection.

About three months later, the Medical Care Availability and Reduction of Error Act came into effect.[3] This legislation imposed new standards for the admissibility of expert testimony in medical malpractice cases—requirements that were significantly stricter than the common law. *See, e.g., Vicari v. Spiegel,* 605 Pa. 381, 386, 989 A.2d 1277, 1280 (2010). Of particular relevance here, Section 512 of the MCARE Act requires, among other things, that an expert testifying as to a physician's standard of care:

(1) Be substantially familiar with the applicable standard of care for the specific care at issue as of the time of the alleged breach of the standard of care.

(2) Practice in the same subspecialty as the defendant physician or in a subspecialty which has a substantially similar standard of care for the specific care at issue, except as provided in subsection (d) or (e).

(3) In the event the defendant physician is certified by an approved board, be board certified by the same or a similar approved board, except as provided in subsection (e).

40 P.S. § 1303.512(c).

Thereafter, there was some uncertainty, particularly in the common pleas courts, regarding this statute's applicability to cases, such as the present one, commenced prior to the Act's effective date. *See, e.g., Britt v. Peff,* No. 3206 Dec. Term 1999, 2003 WL 22345720, at *12 (Pa.Com.Pl., Oct. 10, 2003) (assessing objections to proposed experts' competency under both common law and the MCARE Act). Beginning with its

---

2. Warren General Hospital was also named as a defendant, but was dismissed from the case by stipulation prior to trial.

3. Act of March 20, 2002, P.L. 154, No. 13 (as amended 40 P.S. §§ 1303.101–1303.1115)(the "MCARE Act").

2004 decision in *Wexler v. Hecht*, 847 A.2d 95 (Pa.Super.2004), however, the Superior Court determined and maintained that the Legislature intended the MCARE Act's competency standards to apply to actions commenced both before and after the time of its enactment. *See id.* at 101; *accord Bethea v. Phila. AFL–CIO Hosp. Ass'n*, 871 A.2d 223, 226 (Pa.Super.2005); *Warren v. Folk*, 886 A.2d 305, 309–10 (Pa.Super.2005); *George v. Ellis*, 911 A.2d 121, 126 (Pa.Super.2006). Ultimately, in June of 2007, this determination was upheld by a majority of this Court, albeit in a deeply divided opinion. *See Wexler v. Hecht*, 593 Pa. 118, 131, 928 A.2d 973, 981 (2007) (clarifying, as a matter of statutory interpretation, that "Section 512 applies at trials of medical malpractice actions occurring after its effective date ... assuming the affordance of adequate time for preparation and adjustment.").

In 2005, Appellants submitted the *curriculum vitae* and report of their proposed expert witness, William L. Manion, M.D. The former evidenced that Dr. Manion's training, practice and board certifications were all within the field of pathology, specifically the subspecialties of anatomic, clinical and forensic pathology. Among other opinions in his report, Dr. Manion asserted that Appellees contravened the ordinary standards of care by permitting Mrs. Anderson to be discharged from the hospital when certain blood tests, low grade fevers and other factors indicated that she was suffering from a serious infection. In particular, Dr. Manion indicated that, on the date of her discharge, Mrs. Anderson's blood testing showed a "dramatic increase" in the presence of immature white blood cells, which "almost always signifies a bacterial infection." Expert Report of Dr. Manion at 2, R.R. at 67a.

In 2007, the trial court entered a case management order, which specified, in pertinent part:

2. All expert reports shall be exchanged before December 27, 2007.

3. All pretrial motions, including but not limited to, motions for summary judgment and motions in Limine, shall be filed on or before January 26, 2008. Parties desiring to submit brief or memoranda of law with their

motions shall file them by this deadline. Responses to motions shall be due on or before February 5, 2008 with brief or memoranda of law.

July 31, 2007 Civil Case Management Order, at ¶¶ 2–3; *accord* September 13, 2007 Amended Civil Case Management Order at ¶¶ 2–3. For compliance, Appellants relied on the existing expert report of Dr. Manion. Neither Appellants nor Appellees filed a pre-trial motion to address the issue of the pathologist's competency, under Section 512 of the MCARE Act, to render standard-of-care testimony in an action against a general surgeon.

Trial ultimately commenced in September 2008. Appellants opened their evidentiary presentation by proffering Dr. Serena as a witness, as on cross-examination. Among other questioning, he was asked to recount the events of October 10, including Mrs. Anderson's discharge from the hospital, her later return, and the ensuing emergency surgery. In terms of the discharge, it was Dr. Serena's testimony that Mrs. Anderson had substantially recuperated, she showed no signs of any leaking from her colon, he did not regard her low-grade fevers or blood tests as prohibitive of a discharge, and the patient wished to go home. *See* N.T., September 23, 2008, at 89, 161–65. As to the emergency surgery, Dr. Serena said that he found that the intestinal perforation was not along the line of the resection made by Dr. McAfoos, but, rather, was in a nearby area of non-thriving tissue. *See id.* at 118, 130–31, 169. Dr. Serena theorized that Mrs. Anderson's pre-existing blood condition had impeded the flow of blood to the area, resulting in a weakening of the tissue and the ultimate breach. *See id.* at 174.

Following testimony from several family witnesses, *voir dire* of Appellants' expert witness ensued. Dr. Manion related that he was employed in Burlington County, New Jersey, as a pathologist and medical examiner. *See* N.T. Sept. 24, 2008, at 8. He testified that, following receipt of his medical degree, his training had been focused in the specialty of pathology and included: clinical pathology, pertaining to laboratory testing of blood and urine; anatomical pathology, pertaining to the

examination of tissue specimens; and forensic pathology, pertaining to the determination of cause and manner of death via autopsy. *See id.* at 5–6. Dr. Manion also indicated that he was board-certified in all three areas of pathology. *See id.* at 6. On cross-examination, Dr. Manion admitted that he had never performed surgery for colon cancer, *see id.* at 9, did not admit or discharge patients from the hospital, *see id.* at 11, and had substantially different training and certification requirements than those of a general surgeon, *see id.* at 11–13. In other words, Dr. Manion explained, "I'm what's called a doctor's doctor. I don't see patients, but doctors rely upon me for my opinion in helping with their diagnosis and treatment of patients." *Id.* at 10.

At the conclusion of the voir dire, Appellees lodged an objection, contending that, as a pathologist, Dr. Manion was not competent to express an expert opinion concerning the standard of care applicable to a general surgeon, such as Dr. McAfoos, under Section 512 of the MCARE Act. See 40 P.S. § 1303.512(c). The trial judge observed that the action had been commenced prior to the Act's effective date and questioned whether the Act was applicable, and Appellees cited this Court's *Wexler* decision as confirmation that the Act controlled. As to the application of Section 512, counsel summarized Appellees' substantive position as follows: "[T]he bottom line is, Judge, [Dr. Manion] doesn't see patients, he doesn't even have patients. He can't possibly second guess care and treatment on a patient when he doesn't see patients." N.T., Sept. 24, 2008, at 20.

In response, Appellants' counsel said that it had been his understanding that the Act did not apply, *see* N.T. Sept. 24, 2008, at 32; further, he took the position that Appellees' challenge was waived since they had not raised it in a pre-trial motion.[4] Appellants also argued that the pathologist was well

4. In this regard, Appellants' stated position was as follows:

[W]e are, we're two days into this trial. It's been well known by [Appellees' counsel] that this was my expert. If he thought he was not qualified, then there should have been a motion for summary judgment or whatever, directed verdict, summary judgment. We

qualified to assess the blood tests. According to Appellants, these tests were a preeminent concern, particularly given that the plaintiffs' negligence case had evolved to focus on the decision to discharge Mrs. Anderson from the hospital (as opposed to negligence in the surgical procedure) as the pivotal instance of alleged malpractice. Appellants' attorney explained:

What Dr. Manion's opinion is and what his testimony will be is that this was—it was in his view as a pathologist, a person who reviews Woodwork, blood tests, tissues, that it was medical negligence, it was negligence to discharge this patient under those conditions, and this was what caused her death.

The death wasn't caused by the surgery. That's not what the issue is. The death was caused by an early discharge with other signs that this lady had an infection before she was ever discharged and that infection caused her death.

Now, that's what a pathologist-they're the people who do the blood analysis. They're the people who do the tissue analysis.

N.T. Sept. 24,2008, at 20–21.

After a brief recess, the following discussion ensued among the trial court and the attorneys regarding the Section 512 competency requirements. First, in terms of the same-sub-specialty requirement of Section 512(c)(2), the court observed that there is an exception in Section 512(d), as follows:

(d) Care outside specialty.—A court may waive the same subspecialty requirement for an expert testifying on the standard of care for the diagnosis or treatment of a condition if the court determines that:

(1) the expert is trained in the diagnosis or treatment of the condition, as applicable; and

come to this trial and spend this amount of time and bring this man in—

N.T. Sept. 24, 2008, at 32.

(2) the defendant physician provided care for that condition and such care was not within the physician's specialty or competence.

40 P.S. § 1303.512(d). In terms of that exception, the trial judge expressed the concern that:

I'm ... not finding a way to get around 'the expert is trained in the diagnosis or treatment of the condition.' He may be trained in the diagnosis based on his anatomy—his Ph.D. in anatomy and also his qualifications in terms of pathology.

\* \* \*

But treatment of the condition, 'and (2) the defendant physician provided care for that condition,' his testimony to this point is that he has never provided care.

N.T. Sept. 24, 2008, at 28. Appellants' response was to highlight pathologists' expertise in interpreting laboratory reports, upon which physicians rely. *See id.* at 28–30.

The trial court also referenced a separate subsection of the competency statute—Section 512(e)—an exception to both the subsection (c) same-subspecialty and board-certification requirements—which prescribes as follows:

(e) Otherwise adequate training, experience and knowledge.—A court may waive the same specialty and board certification requirements for an expert testifying as to a standard of care if the court determines that the expert possesses sufficient training, experience and knowledge to provide the testimony as a result of active involvement in or full-time teaching of medicine in the applicable subspecialty or a related field of medicine within the previous five-year time period.

40 P.S. § 1303.512(e). On this subject, the court commented, "And again, [Dr. Manion's] teaching on his CV as I recall ended in the '80's," to which Appellants' counsel only responded, "I think it did." N.T. Sept. 24, 2008, at 30.

At this juncture, the trial court sustained the objection to Dr. Manion's testimony. Appellees moved for a nonsuit, which Appellants opposed on the basis that Dr. Manion met

the Section 512(d) exception to the same-subspecialty requirement. *See id.* at 33–34. Other than by way of quoting Section 512(c)'s provisions, *see id.* at 32, Appellants did not address Section 512(c)(3)'s board-certification requirement or the Section 512(e) exception. The trial court awarded the nonsuit.

Subsequently, Appellants lodged a motion to remove the nonsuit, maintaining, *inter alia,* that Appellees' challenge to Dr. Manion's qualifications was waived and, in any event, the pathologist's credentials satisfied the MCARE Act requirements. In the latter regard, it was Appellants' position that the trial court erroneously "concentrated its decision based on [Section 512(e) ] rather than on section (d)[.]" Motion for Removal of Non Suit and for a New Trial at ¶ 3; *see also id.* at ¶ 7 ("The Court erred in failing to apply § 1315.512(d) [sic] to the testimony of Dr. Manion."). The motion contained no substantive treatment of the related-field-of-medicine focus of Section 512(e).

In denying Appellants' motion, the trial court explained that no authority requires a party to file a motion *in limine* to preserve an objection to an expert's competency under the MCARE Act, and therefore, Appellees had properly raised their objection to Dr. Manion's qualifications following *voir dire.* On the merits, the court determined that, although Dr. Manion's familiarity with the applicable standard of care for purposes of Section 512(c)(1) was questionable, he plainly did not satisfy the requirements of Section 512(c)(2) or (3), as he admitted that he neither practiced in the same subspecialty as Dr. McAfoos nor was certified by the same board. *See* 40 P.S. § 1303.512(c). The court thus turned to the potential exceptions to those requirements, as set forth in Section 512(d) and (e).

The trial court deemed subsection (d) inapplicable, among other reasons, because Dr. Manion "does not have any patients and therefore cannot possibly diagnose and treat patients; in other words, he does not diagnose and treat patients, he *helps* doctors to diagnose and treat patients," and since post-operative care plainly falls within the range of a general surgeon's specialty and competence. *Anderson v.*

*McAfoos*, No. AD 80 of 2002, *slip op.* at 7 (C.P.Warren, Jan. 23, 2009) (emphasis in original). Also finding subsection (e) inapplicable, the court reasoned that Dr. Manion "had not been active in or involved in full-time teaching in the subspecialty of surgery within the previous five years." *Id.* at 8.

Appellants appealed, raising essentially the same claims as were raised in the motion to remove the nonsuit. Again, the only substantive discussion of exceptions to the Section 512(c) requirements for standard-of-care testimony was of the Subsection (d) exception. *See* Brief for Appellant in *Anderson v. McAfoos*, No. 356 WDA 2009, *slip. op.* (Pa.Super. Mar. 19, 2010), at 9–11. Again, however, by the express terms of Section 512(c), subsection (d) applies as an exception only to the same-subspecialty standard but does not extend to the board-certification requirement. *See* 40 P.S. §§ 1303.512(c)(2), (3). The sole expressed exception to Section 512(c)(3) is reposited in subsection (e).

A three-judge panel of the Superior Court affirmed the trial court's order, with Judge Panella dissenting without opinion. Regarding the timing of Appellees' objection, the majority found that they had not waived their challenge to Dr. Manion's competency by failing to raise the issue in a motion *in limine*, noting that such an objection may be raised immediately following voir *dire. See Anderson v. McAfoos*, No. 356 WDA 2009, *slip op.* at 11–12 (Pa.Super. Mar. 19, 2010) (citing *Vicari v. Spiegel*, 936 A.2d 503, 512 n. 10 (Pa.Super.2007), *aff'd*, 605 Pa. 381, 989 A.2d 1277 (2010), for the proposition that objections to an expert's competency "could have been raised, at the earliest, in a pretrial motion *in limine* following receipt of his *curriculum vitae* and expert report or, at the very least, following voir dire on his qualifications"). The Superior Court also agreed with the trial court's determination that the exceptions to Section 512(c) did not apply. The majority recognized Appellants' citation to decisions in which courts have found specialty overlaps sufficient to meet the Act's requirements. *See, e.g., Smith v. Paoli Mem'l Hosp.*, 885 A.2d 1012, 1019 (Pa.Super.2005). Nevertheless, the majority distinguished these opinions on the ground that Dr. Manion, unlike

the experts in such cases and despite his familiarity with laboratory testing, did not actually diagnose or treat patients.

In granting Appellants' petition for allowance of appeal, the Court framed the questions presented as follows: (a) When should the defendant raise an objection to the plaintiffs expert's qualifications under the MCARE Act? (b) Whether a board certified pathologist may, under Section 512 of the MCARE Act, testify regarding a general surgeon/treating physician's standard of care in deciding to discharge a patient without reading the patient's blood work results?

*Anderson v. McAfoos,* 608 Pa. 567, 13 A.3d 462 (2011) (*per curiam*). As these issues present questions of law, our standard of review is *de novo* and our scope of review is plenary. *See Vicari,* 605 Pa. at 390, 989 A.2d at 1282; *Wexler,* 593 Pa. at 126, 928 A.2d at 977.

At the outset, it should be clear from the above that there are pervasive obstacles impeding orderly review of the broader spectrum of Section 512. In the first instance, Appellants have made (and make) no claim that Dr. Manion's credentials meet the express terms of Section 512(c)(3)'s board-certification requirement, *i.e.,* that he "be board certified by the same or a similar approved board" as Dr. McAfoos. 40 P.S. § 1303.512(c)(3); *see supra* note 1. Accordingly, and since each of the three Section 512(c) requirements (standard-of-care-familiarity, same-subspecialty, and board-certification) is mandatory, *see Vicari,* 605 Pa. at 388, 989 A.2d at 1281 ("[T]he expert witness must meet *all* of these statutory requirements in order to be competent to testify." (emphasis in original)), Appellants were required to establish that Dr. Manion's qualifications met the requirements of Section 512(e). *See* 40 P.S. § 1303.512(c)(3) (delineating subsection (e) as the sole exception to the board-certification requirement).[5]

5. Appellants' *amicus curiae,* the Pennsylvania Association for Justice, recognizes this point, *see* Brief for *Amicus* Pa. Ass'n of Justice at 22, but suggests that the limitation may be on account of a legislative drafting error. *Amicus* explains that, under the literal terms of Section 512, out-of-specialty treatment by a defendant-physician does not relieve a

Apparently in light of Appellants' trial counsel's unawareness that Section 512 was applicable to their case, however, Appellants simply did not frame Dr. Manion's *voir dire* to address the related-fields-of-medicine focus of Section 512(e). Furthermore, Appellants did not provide any substantive argument that Dr. Manion met the requirements of Section 512(e) in their oral argument in opposition to the nonsuit, motion to remove the nonsuit, or brief to the Superior Court. In the circumstances, the substantive applicability of Section 512(e), a necessary prerequisite to Dr. Manion's competence under the statute, is not appropriately positioned for our review. *See* Pa.R.A.P. 302(a) ("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal.").

■ We are cognizant of the stakes involved in cases such as this one, where plaintiffs who have suffered a grievous loss are deprived of their day in court. Issue preservation and presentation requirements are enforced in our system of justice for principled reasons, however, as they facilitate the open, deliberate, and consistent application of governing substantive legal principles from the foundation of a case through its conclusion on appellate review. Loose shifting of positions after the entry of judgments by those challenging them disrupts the stability and predictability of the process, fostering the potential for unfairness. As well, there are substantial interests at stake on both sides of medical malpractice actions.

proponent of expert evidence of the board-certification requirement, even though the board-certification may be in a completely different specialty area than the treatment at issue. *See id.* at 21–22 & n. 2. *Amicus* contends that:

> Under the circumstances of this case ... the board certification requirement is essentially irrelevant. Where the care in question cuts across disciplines, to insist upon the board certification prerequisite is to elevate form over substance.

*Id.* at 21. The difficulty, of course, lies in the actual terms of the statute, which the courts are not free to disregard based merely on policy arguments. To the extent that *amicus* is suggesting that we should depart from the plain terms of the statute on the ground that enforcement yields unreasonable results, *see* 1 Pa.C.S. § 1922(1), such contention simply is not before the Court, as it has not been raised by Appellants.

■ Moreover, the professional handling of civil actions is essential to the administration of justice. It is difficult to conceive that an attorney pursuing recovery for alleged medical malpractice would overlook a physician's unawareness of new treatment protocols imposed in his practice area for several years before the treatment at issue. Similarly, we would be remiss to disregard requirements of issue preservation and presentation to alleviate consequences which may flow from attorneys' failure to remain abreast of the areas of law in which they practice.

We hold that, because Appellants did not properly raise and preserve a claim that Dr. Manion's credentials satisfy the requirements of Section 512(e), they cannot now advance this contention in support of their assertion that the pathologist should have been permitted to render standard-of-care testimony in an action against a board-certified general surgeon.

In terms of the remaining trial waiver issue, Appellants maintain that the proper method for challenging an expert's competency under Section 512 of the MCARE Act is via a motion *in limine* advanced according to the deadlines set forth in the applicable case management order. At a minimum, Appellants contend that the objection in the present circumstances should have been raised in Appellees' pretrial statement, at least where local rules require such statements to contain "a statement of any unusual questions of evidence, fact or law." Warren–Forest CCP Rule L212 (entitled, "Pre–Trial Conference"). These avenues, Appellants reason, diminish the risk of unfair surprise and provide the party proffering the expert with an opportunity to remedy any purported defects in his qualifications. According to Appellants, such procedure ensures that the application of Section 512 to cases initiated prior to its effective date remains consistent with the Legislative intent to provide "a fair legal process and reasonable compensation for persons injured due to medical negligence." 40 P.S. § 1303.502. Appellants observe that this Court has also highlighted the importance of affording a plaintiff "adequate time for preparation and adjustment," when applying the MCARE Act requirements to cases initi-

ated prior to its effective date. *Wexler,* 593 Pa. at 131, 928 A.2d at 981.

On the present facts, Appellants contend, because the court expressly directed that all motions *in limine* be filed by January 26, 2008, *see* July 31, 2007 Civil Case Management Order, at ¶ 3, R.R. at 62a, and local rules require unusual evidentiary questions to be presented in the pre-trial statement, Appellees should have raised their objection to Dr. Manion's qualifications through those vehicles. Indeed, Appellants continue, it would be fundamentally unfair to permit Appellees to first assert an objection to Dr. Manion's competency following voir dire on the second day of trial, given that such timing fatally undermined Appellants' case, and that Appellees possessed Dr. Manion's *curriculum vitae* and expert report for more than two years prior to the commencement of trial. Appellants posit that even Appellees' attorneys did not know of the *Wexler* line of decisions prior to trial, or, if they did, they deliberately and strategically delayed their objection to prevent Appellants from obtaining an expert meeting the MCARE Act's competency requirements.

Appellants' *amicus,* the Pennsylvania Association for Justice, substantially supports their position in the above regards. In light of the traditional role of expert *voir dire,* however, the Association adds a degree of circumspection as follows:

> *Amicus* is reluctant to urge the enforcement of a bright line rule [requiring Section 512 challenges to be advanced by motion *in limine* ] in all cases. Undoubtedly, there may be circumstances where defects in qualifications may not be readily apparent until trial, circumstances change as testimony unfolds, or the failure to object via a pre-trial motion *in limine* may be reasonably excused. The instant matter, however, does not appear to be such a case.

Brief for *Amicus* Pa. Ass'n for Justice at 11–12.

In response, referencing majority and responsive opinions in *Vicari,* 605 Pa. at 399, 401, 989 A.2d at 1288, 1289, Appellees maintain that a majority of the Justices of this Court already have indicated that an objection to an expert's competency

under Section 512 of the MCARE Act may be made following *voir dire.* Further, Appellees observe that no law requires such objections to be raised, on penalty of waiver, prior to such time. Rather, in Appellees' view, the waiver assessment should focus on whether the proponent of expert evidence had "the opportunity to address the objection and, where appropriate, to cure a defect." *Gbur v. Golio,* 600 Pa. 57, 76 n. 12, 963 A.2d 443, 455 n. 12 (2009) (Opinion Announcing the Judgment of the Court). Here, Appellees aver that Appellants had sufficient time in which to ascertain that their expert was satisfactorily qualified, given that trial commenced more than one year after this Court confirmed that Section 512 applied to cases initiated prior to its effective date. *See Wexler,* 593 Pa. at 131, 928 A.2d at 981. Thus, Appellees develop, their objection under Section 512 was not an unfair or surprising turn of events, but rather reflected an application of well-settled law. *See* Brief for Appellees at 7 ("Just because [Appellants'] counsel did not anticipate the objection, does not make this into a 'trial by ambush.' "). In support of Appellees, *amicus* the Pennsylvania Medical Society highlights that the party seeking to qualify an expert witness bears the burden of demonstrating that the proposed expert satisfies the applicable requirements, such as those stated in Section 512. *See Grady v. Frito–Lay, Inc.,* 576 Pa. 546, 558, 839 A.2d 1038, 1045 (2003). *Amicus* concludes:

> In general, there is little need for advance notice on this issue. A plaintiff seeking to qualify an expert witness is charged with knowing the criteria to be met and presenting testimony showing the expert satisfies them. The problem here was that Plaintiff's counsel was unaware that the Mcare rules applied, even though the Superior Court had established Mcare's applicability to "pre-Mcare Cases" in April, 2004. *See Wexler v. Hecht,* 847 A.2d 95 (Pa.Super.2004). The effort to cast fault on opposing counsel misplaces responsibility.

Brief for *Amicus* Pa. Med. Soc'y at 32.

■ Upon review, we agree with Appellees and their *amicus* that there is no general legal requirement that an objec-

tion to a proposed expert's qualifications under the MCARE Act be made prior to *voir dire.* We also do not regard a case management order which merely establishes deadlines for the filing of pre-trial motions as creating such a requirement. As such, Appellees cannot be faulted for proceeding in accordance with the traditional procedure of testing an expert's qualifications through the voir dire process. *Cf. Vicari,* 605 Pa. at 392, 989 A.2d at 1284 ("Determining whether one field of medicine is 'related' to another with respect to a specific issue of care is likely to require a supporting evidentiary record and questioning of the proffered expert during *voir dire.*").

 In terms of the local rule, there is a colorable argument to be made that the applicability of the MCARE Act to cases filed prior to its enactment was an "unusual question[ ] of evidence, fact or law." Warren–Forest CCP Rule L212. In this vein, the pending-cases issue was accepted for this Court's review in 2005, *see Wexler v. Hecht,* 583 Pa. 700, 879 A.2d 1258 (2005) (*per curiam* ), resulting in a deeply divided (albeit majority) decision of the Court in June of the same year as the December discovery deadline in the present matter, *see Wexler,* 593 Pa. at 126–31, 928 A.2d at 977–81. Nevertheless, as the parties challenging the judgment and the appellants throughout the appellate process, Appellants bore the threshold burden of issue-preservation. Here, Appellants did not raise the local rules as a basis for relief at the time of trial or in the Superior Court. Accordingly, the matter simply is not subject to our present consideration. *See* Pa.R.A.P. 302(a).

 Furthermore, although Appellees repeatedly admonish that Appellants had an opportunity to cure the defect in their expert proffer at the time of the objection, *see, e.g.,* Brief for Appellees at 6, there is little evidence (at least on this record) that such a cure would have been possible at the time of trial, given the differences between the respective specialties of Drs. McAfoos and Manion. In light of such factors, we do recognize, once again, that the fairness considerations involved here are mixed and that important interests are at stake. In this regard, however, Appellants' brief simply does not come

to terms with the following circumstances: (1) the MCARE Act came into effect nearly six years before the deadline for the exchange of expert reports in this case, *see* Act of March 20, 2002, P.L. 154, No. 13 § 5108; (2) the applicability of the MCARE Act's competency requirements to cases pending at the time of its passage had been established by an intermediate appellate court—and was thus binding on the common pleas courts—for more than three years prior to such deadline, *see Wexler,* 847 A.2d at 101; and (3) the proponent of expert testimony is responsible to establish its admissibility, *see Grady,* 576 Pa. at 558, 839 A.2d at 1045. Moreover, it is worth noting that, if there is some question in the mind of a proponent's attorney, he can as much file a motion *in limine* to obtain clarification as can opposing counsel. The order of the Superior Court is affirmed.

Justice ORIE MELVIN did not participate in the decision of this case.

Chief Justice CASTILLE and Justices EAKIN, BAER, TODD and McCAFFERY join the opinion.

Justice BAER files a concurring opinion in which Justices TODD and McCAFFERY join.

Justice BAER, concurring.

I join the majority opinion in its entirety, and write separately to express my personal view on the second issue in the case, *i.e.,* whether the defendant's objection to the competency of the plaintiffs' expert witness should have been deemed waived because it was first asserted at trial, rather than by way of a pre-trial motion *in limine.* I agree with the majority that the current state of the law sets forth no prevailing legal requirement that an objection to the proposed expert's qualifications, as measured pursuant to the MCARE Act,[1] must be

1. The Medical Care Availability and Reduction of Error Act, Act of March 20, 2002, P.L. 154, No. 13 (as amended 40 P.S. §§ 1303.101–1303.1115)("the MCARE Act"). The primary provision of the MCARE Act at issue here is Section 512(c), which provides as follows:

made prior to *voir dire*. The facts of this case, however, illustrate why modification of the current practice should be examined. Here, by lying-in-wait, the defendant was able to secure a judgment on non-merit grounds, notwithstanding two years' notice of the lack of symmetry between the qualifications of the defendant doctor and the plaintiffs' expert. It is always preferable to decide a case on the merits, and requiring a defendant to object through a motion *in limine*, which provides the plaintiff with an opportunity to cure any defect, would further that goal.

The record establishes that in 2005, the plaintiffs submitted the *curriculum vitae* and report of their proposed expert witness, William L. Manion, M.D., a pathologist and medical examiner. On July 31, 2007, the trial court entered a case management order directing all pretrial motions to be filed on or before January 26, 2008. Rather than filing a pretrial motion to address the issue of the pathologist's competency under Section 512 of the MCARE Act, the defendant waited until trial commenced in September of 2008, to lodge an objection to the pathologist's competency to testify under the MCARE Act.

Admittedly, such litigation strategy is in accord with extant law [2] and was successful, as it resulted in the trial court's entry of a nonsuit. Nonetheless, I question whether it serves

STANDARD OF CARE.—In addition to the requirements set forth in subsections (a) and (b), an expert testifying as to a physician's standard of care also must meet the following qualifications:
(1) Be substantially familiar with the applicable standard of care for the specific care at issue as of the time of the alleged breach of the standard of care.
(2) Practice in the same subspecialty as the defendant physician or in a subspecialty which has a substantially similar standard of care for the specific care at issue, except as provided in subsection (d) or (e).
(3) In the event the defendant physician is certified by an approved board, be board certified by the same or a similar approved board, except as provided in subsection (e).
40 P.S. § 1303.512(c).

**2.** This law developed under the far more liberal common law standards for the admission of expert testimony, and now is being employed uncritically in the MCARE Act scenario, where there is a far greater likelihood that the plaintiff's expert may be disqualified as incompetent.

the residents of Pennsylvania to permit this confluence of attrial challenges to an expert's competency and the resulting fatal consequences of expert witness disqualification. Accordingly, I would refer this matter to the Civil Procedural Rules Committee for it to consider revising the rules to require pretrial notice to the plaintiff of objections to a proposed expert's qualifications under the MCARE Act, and to afford the plaintiff an opportunity to substitute a new expert before finding himself out of court.

This Court adopted a similar approach regarding the civil procedural rules that require plaintiffs to file a certificate of merit ("COM") in any professional liability action in which it is alleged that a licensed professional deviated from the acceptable standard of care. In *Womer v. Hilliker*, 589 Pa. 256, 908 A.2d 269 (2006), the plaintiff did not file a COM with his civil complaint as required by Pa.R.C.P. 1042.3, but rather served the defendant with the expert report in discovery within the time-frame set forth for the filing of a COM. This Court held that the plaintiff's failure to adhere to the rule by filing a COM was fatal to his claim, and that, therefore, the trial court properly declined to open the judgment of *non pros.* I dissented, opining that the submission of the expert report to the defendant constituted substantial compliance with Pa. R.C.P. 1042.3, as it disclosed more than merely a certificate attesting to the fact that a licensed professional supplied a statement in which he opined that the defendant's care fell outside the acceptable professional standards—it disclosed the actual expert report itself.

The dissent in *Womer* cited substantial case law recognizing that snap judgments taken without notice should be avoided. *See Queen City Elec. Supply Co., Inc. v. Soltis Elec. Co., Inc.*, 491 Pa. 354, 421 A.2d 174, 177–78 (1980) ("[W]e note that snap judgments taken without notice are strongly disfavored by the courts"); *Kraynick v. Hertz*, 443 Pa. 105, 277 A.2d 144, 147 (1971) (considering the equities and viewing the totality of the circumstances we hold that justice demanded opening the default judgment entered at 8:39 on the morning of the twenty-first day); *Fox v. Mellon*, 438 Pa. 364, 264 A.2d 623,

627 (1970) ("No one is happy with 'snap' judgments, probably including the lawyer who takes one"); *Grone v. Northern Ins. Co. of New York,* 388 Pa. 169, 130 A.2d 452 (1957) (upholding the striking of judgments that bore the stigma of being "snap"); *Reilly Assocs. v. Duryea Borough Sewer Auth.,* 428 Pa.Super. 460, 631 A.2d 621, 624 (1993) (noting that snap judgments entered without notice are disfavored); *Safeguard Inv. Co. v. Energy Service Assocs., Inc.,* 258 Pa.Super. 512, 393 A.2d 476, 477 (1978) ("Snap judgments taken without notice are strongly disfavored by the courts").

While my personal sentiments did not carry the day in *Womer,* the injustice sought to be remedied was accomplished via a subsequent amendment to the civil procedural rules requiring a defendant to give a plaintiff a thirty-day written notice of intention to file a praecipe for a judgment of *non pros* for failure to file a COM. *See* Pa.R.C.P. 1042.6(a). Once notice was provided, the amended rules afforded the plaintiff an opportunity to seek a determination by the court as to the necessity of filing a COM. *See* Pa.R.C.P. 1042.6(a), (c). Thus, the harsh consequence arising from a plaintiff's failure to file a COM was ameliorated with a fair rule of process.

An analogous procedure affording adequate notice to the plaintiff and an opportunity to cure any defects in competency by obtaining another expert should be adopted to the same end. This would diminish the potential of an unexpected procedural dismissal, and result in a more evenhanded and deliberate process. As the Civil Procedural Rules Committee is the appropriate entity to examine the propriety and contours of amended procedures, I would refer this matter so that the inequitable, but "legal" result occurring herein is avoided in the future.

Justices TODD and McCAFFERY join the opinion.