J-A33042-16

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| ALDIS RUTYNA AND MARY JANE RUTYNA, | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| Appellants | : | |
| | : | |
| v. | : | |
| | : | |
| WILLIAM S. SCHWEERS, JR., | : | |
| | : | |
| Appellee | : | No. 895 WDA 2016 |

Appeal from the Order Entered June 1, 2016,
in the Court of Common Pleas of Allegheny County,
Civil Division at No(s): GD 07-025594

BEFORE:   LAZARUS, SOLANO, and STRASSBURGER,* JJ.

MEMORANDUM BY STRASSBURGER, J.:   **FILED MARCH 27, 2017**

Aldis and Mary Jane Rutyna (the Rutynas) appeal from the order entered on June 1, 2016, which granted the motion for nonsuit filed by William S. Schweers, Jr. (Attorney Schweers) and dismissed this legal malpractice case.[1]  Upon review, we affirm.

---

[1] An appeal does not lie from an order granting a nonsuit; rather, an appeal lies from the judgment entered after the denial of a motion to remove a nonsuit. **See Billig v. Skvarla**, 853 A.2d 1042, 1048 (Pa. Super. 2004) ("[W]here a nonsuit has been entered the case is not ripe for appeal until after a motion to remove the nonsuit has been presented to the court and denied.").  No such motion was filed in this case.  However, as aptly pointed out by the Rutynas, this case is governed by **Lewis v. United Hospitals**, 692 A.2d 1055 (Pa. 1997), in which our Supreme Court held that the entry of a nonsuit was improper when it was entered prior to the presentation of the plaintiff's case on liability. **See** The Rutynas' Response to Rule to Show Cause, 7/11/2016.  Thus, Attorney Schweers's motion for nonsuit, which was made prior to the commencement of the trial, should have been entitled a motion for summary judgment. **See Sigall v. Serrano**, 17 A.3d 946, 949 (Pa. Super. 2011) ("[A] trial court's order dismissing a case prior to trial is

*Retired Senior Judge assigned to the Superior Court.

On May 18, 2006, Attorney Schweers filed a medical malpractice complaint on behalf of the Rutynas, naming as defendants William P. Donaldson, III, M.D., and the University of Pittsburgh Medical Center-Presbyterian (UPMC). The complaint alleged that Mr. Rutyna was injured as a result of negligence during back surgery. After the Rutynas, through Attorney Schweers, did not file a certificate of merit, a judgment of *non pros* was entered, and the Rutynas' medical malpractice case was dismissed.

On December 5, 2007, the Rutynas filed a complaint against Attorney Schweers and his law firm, Harrington, Schweers, Datillo & McClelland, P.C. (the Law Firm).[2] After preliminary objections were resolved, the Rutynas were permitted to proceed on legal malpractice and breach of contract claims against Attorney Schweers and a vicarious liability claim against the Law Firm.[3] Specifically, the Rutynas alleged that Attorney Schweers's performance fell below the standard of care for failing to file the required certificate of merit, resulting in the entry of a *non pros* judgment against the Rutynas.

---

properly characterized as either a summary judgment or a judgment on the pleadings.") (internal quotation marks omitted). Because an order granting a motion for summary judgment and dismissing a case is immediately appealable as a final order, the case is properly before us.

[2] At this point, the Rutynas were represented by Justin R. Lewis, Esquire and his firm, the Cook Law Group.

[3] On January 11, 2011, Robert O. Lampl, Esquire, and James R. Cooney, Esquire, entered their appearances on behalf of the Rutynas.

On September 12, 2012, Attorney Schweers and the Law Firm filed a motion for summary judgment claiming, *inter alia*, they were entitled to judgment as a matter of law because the Rutynas would not be able to obtain an expert report to support the medical malpractice claim for their underlying case.[4] In response to that motion for summary judgment, the Rutynas attached an expert report from Dr. Mark Foster, dated February 28, 2008, which opined that Dr. Donaldson deviated from the standard of care during and following Mr. Rutyna's back surgery. After the trial court heard oral argument on that motion, counsel for Attorney Schweers and the Law Firm hand-delivered a letter to the trial court. In that letter, Attorney Schweers and the Law Firm requested summary judgment be entered in their favor because the Rutynas had not yet produced an expert report with respect to the **legal** malpractice claim.[5] The trial court issued an order requiring that the Rutynas submit such expert report within 45 days. The Rutynas did not do so and the trial court granted summary judgment.

---

[4] "[A] legal malpractice action in Pennsylvania requires the plaintiff to prove that he had a viable cause of action against the party he wished to sue in the underlying case and that the attorney he hired was negligent in prosecuting or defending that underlying case (often referred to as proving a 'case within a case.')." **Myers v. Robert Lewis Seigle, P.C.**, 751 A.2d 1182, 1184 (Pa. Super. 2000).

[5] Instantly, Attorney Schweers claimed he contacted Dr. Lance Perling, who issued a report concluding that Dr. Donaldson and UPMC were not negligent in their treatment of Mr. Rutyna. Thus, Attorney Schweers claimed he could not file a certificate of merit.

On April 30, 2013, the Rutynas appealed to this Court arguing that they never received a copy of the trial court's order requiring they file an expert report as to their legal malpractice claim. On appeal, this Court vacated the trial court's order granting summary judgment because the docket did not show that the Rutynas received a copy of the trial court's order. *Rutyna v. Schweers*, 100 A.3d 325 (Pa. Super. 2014) (unpublished memorandum). At that juncture, the Rutynas filed an expert report from Attorney Dennis Blackwell as to their legal malpractice claim.

On April 27, 2014, Attorney Schweers and the Law Firm filed a motion for summary judgment claiming that Attorney Blackwell's expert report failed to satisfy the Rutynas' burden. On July 14, 2014, the trial court granted summary judgment once again. On appeal, this Court vacated the order granting summary judgment. Specifically, we held that

> when the record is viewed in the light most favorable to [the Rutynas], the record demonstrates that Attorney Schweers contacted, at most, one expert - Dr. Perling - to support the certificate of merit in the underlying case. However, as Attorney Blackwell opined, when an attorney contacts only one potential expert to support a certificate of merit and then receives a negative response, the attorney breached the standard of care he owes to his client.

*Rutyna v. Schweers*, 122 A.3d 1129 (Pa. Super. 2015) (unpublished memorandum at 16).

Upon return to the trial court, the case was scheduled for trial on January 11, 2016. Attorney Schweers requested that the upcoming trial be

bifurcated with the medical malpractice portion being heard first, then the legal malpractice portion continuing at some point in the future, if necessary, depending on the outcome of the medical malpractice trial. That motion was granted on October 27, 2015.[6]

In November of 2015, Attorney Schweers moved for a continuance because the attorney who was recently retained to conduct the medical malpractice portion of the trial was not available in January. The Rutynas contested that motion; however, the trial court continued the case from the January trial list. The trial court also noted that no further continuances would be granted. The trial was scheduled for June 2, 2016.

On May 16, 2016, the Rutynas requested a continuance. In that motion, the Rutynas averred that counsel for Attorney Schweers advised counsel for the Rutynas, on May 10, 2016, that their expert, Dr. Foster, "had signed a consent judgment in another case in which he agreed not to testify against UPMC or any of its physicians in any pending or future cases." Motion for Continuance, 5/16/2016, at ¶ 11. Thus, the Rutynas requested a continuance in order to obtain a new expert. Attorney Schweers responded that the Rutynas, knowing that their case was dependent upon the testimony of Dr. Foster, should have known that Dr. Foster's ability to testify as an expert was in jeopardy prior to the signing of the consent order

---

[6] Additionally, the Law Firm was dismissed as a party to the case by consent order.

because, *inter alia*, Dr. Foster "no longer practices in the same sub-specialty as Dr. Donaldson" and "lost his privileges to practice medicine at UPMC in 2005." Response to Motion for Continuance, 5/16/2016, at 3. On May 16, 2016, the Calendar Control Judge, Judge Folino, denied the motion for continuance.

On June 1, 2016, prior to the commencement of trial, Attorney Schweers filed a motion *in limine* to preclude Dr. Foster from testifying as he was not qualified under the MCARE Act,[7] and also made an oral motion for nonsuit on the basis that the Rutynas did not have a medical expert qualified to testify. After hearing oral argument, Judge Colville granted both motions. Specifically, the trial court concluded that it would

> [g]rant the motion *in limine* as to Dr. Foster based, No. 1, wholly and independently upon [its] determination that [Dr. Foster] does not possess adequate qualifications under M[CARE] in light of his failure to practice within the subspecialty or for that matter within ten years.

N.T., 6/1/2016, at 70. The trial court went on to state:

> [] I'm not persuaded that I should exercise any discretion afforded to [the trial court] under the M[CARE] Act to waive that requirement in the case of Dr. Foster. I don't see any basis for doing so.
>
> ***
>
> So as a completely independent finding or ruling, [Dr. Foster] is disqualified. And I'm granting [Attorney Schweers's] motion to

---

[7] MCARE is the acronym for the Medical Care Availability and Reduction of Error Act. 40 P.S. §§ 1303.101-1303.910.

prohibit him from testifying based purely upon his lack of adequate credentials as qualifying under M[CARE].

N.T., 6/1/2016, at 70-71. Thus, because the Rutynas did not have an expert available and qualified to testify, the trial court granted the motion *in limine*. In addition, the trial court denied the Rutynas's request for a continuance to give them additional time to procure an expert. Finally, the trial court granted a nonsuit because the Rutynas were not able to proceed.[8]

The Rutynas timely filed a notice of appeal, and both the Rutynas and the trial court complied with Pa.R.A.P. 1925.

On appeal, the Rutynas set forth four issues for our review, which we have re-ordered for ease of disposition.

[1.] Did the [trial court] err in holding that [the Rutynas'] proposed expert was not qualified to testify under the [MCARE] Act?

[2.] Did the [trial court] err in dismissing the case with prejudice due to [the Rutynas'] inability to produce an expert medical witness, when such inability was caused by the actions of [counsel for Attorney Schweers]?

[3.] Did the [trial court] err in denying [the Rutynas'] motion for sanctions or other appropriate relief arising out of [Attorney Schweers's] interference with [the Rutynas'] expert?

[4.] Did the [trial court] err in denying [the Rutynas' motion for continuance] to permit them sufficient time to procure a "replacement" expert?

---

[8] As to the propriety of a nonsuit at this juncture, *see* footnote 1, *supra*.

The Rutynas' Brief at 4 (unnecessary capitalization and trial court answers omitted).

We first consider the Rutynas' argument that the trial court erred in "finding that Dr. Foster was not 'qualified to testify' under the [MCARE] Act." The Rutynas' Brief at 22. We consider this issue mindful of the following.

> [W]hether a witness has been properly qualified to give expert witness testimony is vested in the discretion of the trial court. It is well settled in Pennsylvania that the standard for qualification of an expert witness is a liberal one. Thus, we may reverse the trial court's decision regarding admission of expert testimony only if we find an abuse of discretion or error of law. Furthermore, because the issue regarding an expert's qualifications under the MCARE Act involves statutory interpretation, our review is plenary.

*Frey v. Potorski*, 145 A.3d 1171, 1176 (Pa. Super. 2016) (internal citations and quotation marks omitted).

The Rutynas first suggest that Attorney Schweers waited too long to object to Dr. Foster's qualifications, and therefore waived his ability to raise this issue. The Rutynas' Brief at 22. They also argue "there is nothing in the record to support the [trial court's] finding that Dr. Foster was not a qualified witness under [the MCARE Act], and the trial court erred in making this decision "based solely on the representation of Schweers'[s] counsel" which is "clearly contrary to case law on this issue." *Id*. at 23.

The Rutynas' argument that Attorney Schweers waited too long to raise this issue, and therefore waived it, is without merit. Our Supreme Court has held that "there is no general legal requirement that an objection

- 8 -

to a proposed expert's qualifications under the MCARE Act be made prior to *voir dire*." ***Anderson v. McAfoos***, 57 A.3d 1141, 1151 (Pa. 2012). If a party does not waive the issue of an expert's qualifications by waiting until *voir dire*, which typically occurs during a trial, raising it prior to trial is certainly not too late.

This leads to the second part of the Rutynas' issue herein; that the trial court could not make a determination regarding Dr. Foster's qualifications without conducting *voir dire*. However, the trial court could not conduct *voir dire* under these circumstances because, as the Rutynas acknowledge, Dr. Foster would not testify. See N.T., 6/1/2016, at 3. Moreover, attached to the motion in limine was an affidavit signed by Dr. Foster, which stated that he "no longer practice[s] as an orthopedic surgeon."[9] ***See*** Motion in Limine, 6/1/2016. Thus, we cannot agree that the trial court erred by rendering its decision without an evidentiary hearing, and by relying on the representations of counsel as well as the exhibits attached to the motion *in limine*.

The Rutynas next argue that Dr. Foster should be permitted to testify based upon this Court's holding in ***Price v. Catanzariti***, 138 A.3d 8 (Pa.

---

[9] This affidavit, which was attached as an exhibit to the motion *in limine*, was procured from the litigation that produced the consent judgment with UPMC.

Super. 2016).[10]  However, on September 19, 2016, our Supreme Court vacated the order of this Court. **Price v. Catanzariti**, 2016 WL 4989968, 177 WAL 2016 (Pa. September 19, 2016) (*per curiam*).[11]  On November 28, 2016, this Court issued an unpublished memorandum in that case. **Price v. Catanzariti**, 2016 WL 6946476, 1886 WDA 2014 (Pa. Super. November 28, 2016) (unpublished memorandum).  Superior Court Internal Operating Procedure § 65.37 outlines the circumstances upon which this Court may rely upon unpublished memoranda, and none of those circumstances is applicable here.[12]  Accordingly, this Court will not rely, in any respect, on

---

[10] In that case, this Court considered Dr. Foster's expert qualifications under different circumstances.  Specifically, Dr. Foster, an orthopedic surgeon, was retained as an expert to testify against Dr. Catanzariti, a podiatrist.  The trial court held that an orthopedic surgeon was not qualified to testify against a podiatrist under MCARE.  Upon review, this Court held that the MCARE Act does not apply to podiatrists; therefore, we reversed the order of the trial court.

[11] Our Supreme Court vacated that order because the appellant did not preserve for appeal the issue upon which this Court reversed.  Thus, the Supreme Court remanded the case to this Court to consider the issues that were preserved.

[12] That IOP provides the following:

> An unpublished memorandum decision shall not be relied upon or cited by a Court or a party in any other action or proceeding, except that such a memorandum decision may be relied upon or cited (1) when it is relevant under the doctrine of law of the case, *res judicata*, or collateral estoppel, and (2) when the memorandum is relevant to a criminal action or proceeding because it recites issues raised and reasons for a decision affecting the same defendant in a prior action or proceeding. When an unpublished memorandum is relied upon pursuant to

that memorandum. Based on the foregoing, the Rutynas have failed to convince us that the trial court erred in concluding that Dr. Foster was not qualified under MCARE in this case.

Moreover, even if the Rutynas set forth an argument that Dr. Foster was qualified to testify under MCARE, rather than relying upon this Court's holding in **Price**, we would conclude that he is not qualified.

> With passage of the MCARE Act, the General Assembly created a more stringent standard for admissibility of medical expert testimony in a medical malpractice action by the imposition of specific additional requirements not present in the common law standard. Our Supreme Court has summarized these additional requirements as follows:
>
>> [P]ursuant to Section 512, to testify on a medical matter in a medical malpractice action against a defendant physician, an expert witness must be a licensed and active, or a recently retired, physician. In addition, in order to render an opinion as to the applicable standard of care, the expert witness must be substantially familiar with the standard of care for the specific care in question. Furthermore, the expert witness must practice in the same subspecialty as the defendant physician, or in a subspecialty with a substantially similar standard of care for the specific care at issue ("same specialty requirement"). Finally, if the defendant physician is board certified, the expert witness must be board certified by the same or a similar board ("same board certification requirement"). Importantly, the expert witness must meet all of these statutory requirements in order to be competent to testify.

---

this rule, a copy of the memorandum must be furnished to the other party and to the Court.

I.O.P. § 65.37.

> However, there is an exception to the same specialty and same board-certification requirements: if a court finds that an expert witness has sufficient training, experience, and knowledge to testify as to the applicable standard of care, as a result of active involvement in the defendant physician's subspecialty or in a related field of medicine, then the court may waive the same specialty and same board certification requirements.

*Frey*, 145 A.3d at 1177–78 (internal citations and quotation marks omitted).

Instantly, Attorney Schweers attached to his motion *in limine* an affidavit signed by Dr. Foster where Dr. Foster stated that he "no longer practice[s] as an orthopedic surgeon." *See* Motion in Limine, 6/1/2016. The MCARE Act requires that "an expert testifying as to a physician's standard of care … must … [p]ractice in the same subspecialty as the defendant physician or in a subspecialty which has a substantially similar standard of care for the specific care at issue….". 40 P.S. § 1303.512(c)(2). Because Dr. Foster no longer practices as an orthopedic surgeon, he does not meet the standards set forth by the MCARE Act to testify as an expert against an orthopedic surgeon.

We now turn to the Rutynas' argument that the trial court erred in dismissing this case due to Dr. Foster's inability to testify where that inability was "not caused by the Rutynas, but rather, was caused solely by the actions of [Attorney] Schweers and/or his insurer." The Rutynas' Brief at 18. In addition, we consider the Rutynas' argument that the trial court erred in

denying their motion for sanctions based on the actions of counsel for Attorney Schweers.[13] The Rutynas' Brief at 25-29.

As we have discussed, *supra*, Dr. Foster was unable to testify because he was not qualified under MCARE. Accordingly, even if Dr. Foster were otherwise available, *i.e.*, he had not signed an agreement not to testify, he would have been precluded anyway under MCARE. Because counsel for Attorney Schweers did nothing wrong and none of the alleged actions by counsel had any effect on the outcome, sanctions would not have been appropriate.

The Rutynas next contend that the trial court erred in denying their motion for continuance to provide additional time to find a replacement expert. Specifically, the Rutynas complain about the order denying a

---

[13] With respect to the propriety of the actions of Attorney Schweers's counsel, the trial court stated:

> [T]he concerns and suspicions maintained by [the Rutynas'] counsel regarding the cause for the unavailability of [Dr. Foster] (including even the possibility of, although ultimately unsupported suspicions of "witness tampering") are not adequate basis for [the trial court] to find, based upon the actual record evidence, that [Attorney Schweers's counsel's] conduct, in any way, caused the unavailability of [Dr. Foster], let alone improperly influenced the decision making of [Dr. Foster], much less so constituted "witness tampering" with respect to [Dr. Foster].

Trial Court Opinion, 8/8/2016, at 4. We agree with the trial court.

continuance issued by Judge Folino on May 16, 2016.[14] *See* The Rutynas'

Brief at 20.

We employ the following standard of review when considering an

appeal from the denial of a continuance.

> Because a trial court has broad discretion regarding whether a
> request for continuance should be granted, we will not disturb its
> decision absent an apparent abuse of that discretion. An abuse
> of discretion is more than just an error in judgment and, on
> appeal, the trial court will not be found to have abused its
> discretion unless the record discloses that the judgment
> exercised was manifestly unreasonable, or the result of
> partiality, prejudice, bias, or ill-will.

*In re J.K.*, 825 A.2d 1277, 1280 (Pa. Super. 2003) (internal citations and

quotation marks omitted).

---

[14] As indicated *supra*, the Rutynas renewed this request for a continuance on June 1, 2016. However, the trial judge assigned to this case, the Honorable Robert Colville, stated that he was "not inclined to revisit Judge Folino's denial of the motion for continuance [from May 16, 2016, because] there are [not] circumstances or facts that are new since that time to warrant" a different result. N.T., 6/1/2016, at 9.

While the Rutynas' notice of appeal did not need to include reference to the May 16, 2016 order of Judge Folino, the Rutynas' Pa.R.A.P. 1925 statement should have. *See K.H. v. J.R.*, 826 A.2d 863, 871 (Pa. 2003) ("[I]n the context of a single action, a notice of appeal filed from the entry of judgment will be viewed as drawing into question any prior non-final orders that produced the judgment…. Any concern as to the intended scope of the appeal may be addressed through the filing of a statement of matters complained of on appeal pursuant to Appellate Procedural Rule 1925(b)."). Instantly, the Rutynas' Pa.R.A.P. 1925(b) statement did not clarify that it was appealing from Judge Folino's denial of a continuance, which is important in these circumstances because Judge Folino was not asked to author an opinion explaining his rationale for the denial. However, it does not appear to us that the facts are in dispute with respect to why the trial court denied the Rutynas' motion; therefore, we will address this issue.

Here, the Rutynas once again point to their allegations of misconduct of Attorney Schweers's counsel as the reason the trial court should have granted a continuance. The Rutynas' Brief at 20. However, as we have already explained, Dr. Foster was otherwise unable to testify, and that information was available to counsel prior to May 16, 2016.[15] Moreover, as Judge Colville expressed:

> [T]his case is over a decade old…. The only "surprise" that befell [the Rutynas] respecting the scheduled trial in this matter was that [Dr. Foster] had determined months in advance that he would not offer testimony against [UPMC]. Why [Dr. Foster] did not provide that information to [the Rutynas] is unknown, but his failure to do so is not the fault of [Attorney Schweers], the [trial court], or for that matter, [counsel for the Rutynas], but it is also not a justifiable basis for a continuance of trial.

Trial Court Opinion, 8/8/2016, at 5.

Based on the foregoing, we discern no abuse of discretion on the part of the trial court. It is clear that the trial court did not exhibit "partiality, prejudice, bias, or ill-will" in reaching its conclusion; thus, we will not disturb it. *J.K.*, 825 A.2d at 1280.

---

[15] In fact, counsel for Attorney Schweers went above and beyond his duty as opposing counsel and sent an e-mail to counsel for the Rutynas on August 10, 2010, with a copy of this Court's August 6, 2010 opinion where Dr. Foster was a defendant in a lawsuit filed by UPMC. *Foster v. UPMC South Side Hosp.*, 2 A.3d 655 (Pa. Super. 2010). That opinion states that "[o]n September 15, 2005, [Dr. Foster] was summarily suspended by UPMC after performing surgery on the wrong side of a patient. This error was one of several surgical missteps committed by [Dr. Foster] within two months." *Id*. at 659.

Because the Rutynas have not convinced us the trial court erred in any regard, we affirm the order of the trial court.

Order affirmed.

Judge Lazarus joins.

Judge Solano files a dissenting memorandum.

Judgment Entered.

_Joseph D. Seletyn_

Joseph D. Seletyn, Esq.
Prothonotary

Date:  3/27/2017